## Van Wezel *vs.* Van Wezel.

On an appeal from a decree or order of a vice chancellor to the chancellor, or from the court of chancery to the court for the correction of errors, if a bond is given, instead of a deposit of money, there must be at least two responsible sureties to unite with the appellant in the bond.

If the officer who approves of the security does not know that the sureties offered are responsible, it is his duty to examine them as to the nature of their property, and the place of their residence, and to require them to justify, in at least double the penalty of the bond; and the officer should also annex the affidavit of justification to the bond, and require it to be filed therewith.

The statute authorizing the court out of which an execution issues to discharge the defendant, upon his executing an assignment of his property for the benefit of the party at whose suit he is imprisoned, extends to an execution, for the collection of money only, issued out of the court of chancery.

But the statute does not authorize the discharge of a party in execution for a fine imposed for a contempt of court, or where he is committed for the non-performance of some act or duty which it is in his power to perform.

November 24.   This was a motion to dismiss the appeal entered in this cause for irregularity.   The appeal was also heard on its merits, at the same time.

*H. S. Mackay*, for the complainant.

*W. Muloch*, for the defendant.

THE CHANCELLOR. The appellant has shown that the surety who signed the appeal bond in this case is actually in existence, although it is not alleged that he is responsible for a single dollar. But the appeal was not regularly entered, because, by law, there should have been two or more sureties in the appeal bond. The statute requires a deposit of money on the appeal, or a bond with sureties, in the plural. (2 *R. S.* 605, § 80.) Although the number is not specified in this part of the statute, it requires two to constitute sureties. And the corresponding provision relative to security for costs on a writ of error shows that the legislature thought more than one should be required in such cases. (2 *R. S.* 595, § 26.) The sureties in the appeal bond should also be residents and house-holders, or such persons as would be competent special bail at common law. And the officer who approves of the security, unless he is personally acquainted with the sureties offered, and knows them to be responsible, should require them to justify in at least double the amount of the penalty of the bond, as required by law. He should also examine them as to the nature of their property, and the place of their residence. And in cities, where their place of residence could not otherwise be ascertained, he should require them to specify the number of the house occupied by them, and the street in which it is situated. He should also annex the affidavit of justification to the bond, and require it to be filed therewith, to enable the respondent to ascertain whether the sureties named therein are real persons; and that they may be prosecuted for perjury if they have sworn falsely. These precautions are necessary, as it has frequently happened that notorious insolvents, and those who were actually confined to the limits of the jail, have been hired to become sureties on appeals. On writs of error the sureties must justify if excepted to.

I have also looked into the merits of this appeal, and have no doubt that the decision of the vice chancellor in discharging the defendant from prison was perfectly correct. The defendant was committed to jail upon a capias ad satisfaciendum, or a process in the nature of an execution of that kind, for not paying a sum of money allowed to his wife by way of alimo-

ny, pending a suit brought by her for a separation. The statute authorizing the court out of which the execution issues to discharge the defendant, upon his executing an assignment of all his property for the benefit of the party at whose suit he is imprisoned, extends to executions for the payment or collection of money only issuing out of this court. The process, in this case, was an execution in a civil cause, issued in a suit pending before the vice chancellor of the first circuit. That was then the proper place for the defendant to apply for a discharge. The act of 1813 did not authorize an application to the common pleas for a discharge, on an execution issued out of this court. It was permitted, however, where the process issued out of the supreme court. (1 *R. L.* 351, § 5.) The change of the phraseology in the revised statutes has probably extended the power of the common pleas.

The vice-chancellor is correct in supposing that the power to discharge a party under the provisions of this statute does not extend to the case of a commitment for a fine imposed upon a party for a contempt of the court ; or where the party is imprisoned for the non-performance of some act or duty which it is in the power of the defendant to perform. (*See* 2 *R. S.* 538, § 21, 23.)

As the appeal in this case was not regularly entered, it must be dismissed with costs, to be paid by the next friend of the appellant, by whom the appeal was instituted. But he is to be permitted to set off such costs against the sums which now remain due from the defendant, under the former order of the vice chancellor.

---

The following is the opinion of the Vice Chancellor in the above cause :

W. T. McCoun, Vice Chancellor. The defendant having been committed by several precepts issued from this court, for contempts, in not paying monies ordered to be paid for temporary alimony to the complainant, his wife, now presents a petition, under the 6th art. of title 1, chap. 5, part

2d, of the revised statutes, (2 *vol. Stat.* 31,) to be discharged from imprisonment, on making an assignment of his property. It is objected that his case is not within the statute, and that this court, therefore, has no authority to discharge him. The words of the statute are, "Every person, (except plaintiffs and lessors of a plaintiff and defendant, imprisoned for costs only,) who shall be imprisoned by virtue of one or more executions in civil causes," may petition the court from whence such process issued, &c. for his discharge from such imprisonment, &c. The revised laws of 1813, authorizing a similar proceeding, were a little differently worded : there it is declared, "That if any person shall be charged in execution, &c. and shall be minded to deliver up to the creditor who shall so charge him, all his estate, &c. he may present a petition to the court from whence the process issue," &c. In the act as first passed by our legislature, in 1789, (2 *Jones & Varick's ed.* 408,) the same phraseology was used, and the act of 1813, in this respect, appears to be a literal transcript of the original law on the subject.

The law of our state was undoubtedly borrowed from the "*Lord's Act,*" as it is called in England, passed in 32 *Geo.* 2, *ch.* 28, which is entitled as ours originally was : "An act for the relief of debtors, with respect to the imprisonment of their persons ;" (*Vide* 3 *Evans' Statutes, p.* 109 ;) and it will be perceived by a reference to the 13th section of that act, that ours is copied almost word for word from it. There it is enacted, that if any person or persons shall be charged in execution for any sum not exceeding £100, &c. and shall be minded to deliver up, &c. The Lord's Act underwent various amendments from time to time, in the reign of Geo. 3d, and down to the year 1813 constituted the insolvent law system of that country.

In the courts of law in England the question has frequently arisen, whether a person in prison on an attachment for non-payment of money was within the provisions of such insolvent acts. In *Rex* v. *Stokes,* (*Cowp.* 136,) the court considered an attachment to be an execution in a civil suit, so far as it was intended to enforce an obligation, or the performance of a duty as between party and party ; and as a matter solely between them,

unconnected with the offence itself, it was of a civil nature; (*Vide Bonafores* v. *Schoole*, 1 *T. R.* 316.) And they held, that the defendant who was in custody on attachment for non-payment of costs, was within the provisions of the insolvent laws, and entitled to a discharge.

A similar decision was made in *The King* v. *Peckerill*, (4 *T. R.* 809.) So in *The King* v. *Davis*, (1 *Bos. & Pul. Rep.* 336,) where the defendant was imprisoned on an attachment for non-payment of money to the plaintiff in a cause, and was brought up to be discharged, under the Lord's Act, the court held he was dischargeable, saying that an attachment for the non-payment of money was an execution. In the case of *The King* v. *Hubbard*, (10 *East*, 408,) where the defendant was in custody upon an attachment for non-payment of a small sum due by an award, and was brought up to be discharged under one of the statutes amendatory of the Lord's Act, which was passed to relieve prisoners in execution upon judgments for small sums, the court held he was not entitled to be discharged by that statute, because, although he was in execution by the attachment, he was not imprisoned by virtue of any judgment.

It is, however, very remarkable, that notwithstanding the decisions of the courts of law, there is no case to be found where the court of chancery in England ever extended the benefit of the Lord's Act to persons imprisoned upon process for contempts issued out of that court; and to give to persons so imprisoned the benefit of the Lord's Act, it was deemed necessary to pass a statute expressly for that purpose. (4 *Evans' Stat.* 312.)

Accordingly, in 1809, (43 *Geo. 3, ch. 6*,) parliament passed an act extending to prisoners in custody for contempt of court, by not paying money, or costs, ordered to be paid by decrees or orders of courts of equity, the benefit of the several previous acts for the relief of debtors, with respect to the imprisonment of their persons. Thus shewing, from the very necessity of passing such a law, that the former laws did not, in terms, or by fair construction, apply to persons so imprisoned, under process from the court of chancery. Afterwards, in 1813, when the British parliament adopted a new insolvent law system, and

established a court called "The court for relief of insolvent debtors," they took care to extend its benefits by express enactments to persons imprisoned for contempt for non-payment of money, as well as to persons imprisoned for debt, damages and costs. Hence it would seem to follow, that in the absence of express legislative authority, the court of chancery would not extend to prisoners committed for contempts in that court, the benefit of the insolvent laws; and yet it is difficult to perceive why the same construction should not have been adopted in that court, as was adopted and acted upon so repeatedly in the courts of law in England.

Upon the principle of those decisions, and from the view which was taken of the process of attachment for contempt, in the chancery of Ireland, (1 *Sch. & Lefr.* 174,) I should feel myself at liberty to adopt the same construction here, if we were now considering our statute, as if it stood anterior to the late revision. But when the words of the present statute, taken in connection with the provisions of the law in relation to the proceedings for contempts, (2 *R. S.* 534,) are considered, I think they clearly authorize the conclusion, that prisoners in the situation of this defendant, are entitled to apply, under the statute, for relief from imprisonment.

The words "imprisoned by virtue of one or more executions in civil causes," in the present statute, give rise to the question, whether a precept to commit to prison, under the 4th section of the statute regulating proceedings for contempts, is or is not an execution? It is by that section declared, that when any rule or order of a court has been made for the payment of costs, or any other sum of money, and proof by affidavit shall be made of a personal demand, and that the party has refused to pay, the court may issue a precept to commit the person so disobeying to prison.

The case of disobedience here provided for, it will be perceived, is an exception from all other cases under that statute; for in all other cases therein enumerated, an attachment issues to bring the party into court, to answer before he is committed. But where an order is made for the payment of costs, or any sum of money, and the party disobeys it, no attachment issues in the first instance, but a precept at once goes,

founded upon the fact of his refusal to pay the money.    It is, to all intents and purposes, an execution.    The order is a judgment, rendered in favor of one party against the other, for the payment of a sum certain, or which may be reduced to a certainty, if it be for costs, by a taxation.    The object of the precept is to execute the order, to give effect to it, and to enforce · its performance ; and when the party is imprisoned upon it, he is, within the letter and the meaning of the law, imprisoned by virtue of an execution.    Of this, I think there can be no doubt ; and I think it is equally clear that it is an imprisonment in a civil cause ; for it is a case between party and party, where the one is pursuing a civil remedy against the other ; and it does not partake in the least of a public prosecution.    I have therefore no doubt as to the right of the defendant in this case to present his petition for a discharge.    I wish it to be understood, however, that this opinion is confined to cases arising under the 4th section of the statute, where the person is in prison upon a precept issued for the non-payment of a sum of money, other than costs, which he has been ordered to pay, and has refused, and that it is not to be extended to cases of imprisonment generally, for contempts, where a party has been committed after being brought up on attachment.

. When such a case arises, it will be time enough to consider whether that also is an imprisonment on execution in a civil cause.