THE PEOPLE *ex rel.* JOHN CROUSE *et al.*, Appellants, *v.* GEORGE W. COWLES, County Judge, etc., Respondent.

PRACTICE. HABEAS CORPUS ; JURISDICTION OF THE JUDGE IN PROCEEDINGS UPON A WRIT OF. NO POWER TO REMAND THE PRISONER CONDITION-ALLY. JAIL LIBERTIES. SHERIFF.

The facts in this case, and its more appropriate title, will be found in the dissenting opinion of CLERKE, J. (p. 52, *post.*)

The single point determined by the court is, that, —

Where a person, committed to jail under any process, is brought, upon a writ of *habeas corpus,* before a judge, who, after an examination, orders and adjudges, "that the prisoner is not entitled to a discharge," it is his duty to remand the prisoner to the custody, or place him under the re-straint, from which he was taken ; and he has no authority to declare that he is entitled to the liberties of the jail, nor has he power to remand conditionally, thus, "that he be remanded, etc., unless he give good and sufficient bail, to be approved by the sheriff, for the liberties of the jail."

Such an order is wholly without the jurisdiction of the judge in such a proceeding, and consequently is inoperative, and would neither bind the sheriff to admit to the liberties, nor protect him from liability for an escape, if he should, by virtue of it, admit the prisoner to the liberties.

Such order, being without warrant of law, should be reversed, regardless of the ulterior question, as to whether the prisoner was or was not, under the precept of commitment, entitled to the liberties of the jail.

Both affirmative and dissenting opinions agree in maintaining, that a pris-oner, committed upon a precept issued for the disobedience of an order for the payment of a sum of money, is entitled to the liberties of the jail ; but this view appears not to have been concurred in by the court.

Whether the prisoner, being a female, was exempt from arrest and impris-onment in an action founded upon a contract, though considered in the points of counsel, was not before the court on this appeal, hence no deter-mination of that question was had.

*Pratt, Mitchell & Brown,* for the appellants.

I. The justice and legality of the order, directing the pay-ment of the judgment, could not be inquired into before the county judge, and is not open for discussion here.

1. Those matters were properly before the judge who granted the order, and having been decided by him cannot be inquired into collaterally. The only remedy is by appeal. (33 How. 337 ; *Spalding* v. *People,* 7 Hill, 301.)

2. The party did appeal to the General Term, and the order upon solemn argument was affirmed.

3. These decisions dispose of all objections to the jurisdiction of the judge to hear and determine the matter and all other objections to the order.

4. It disposes of all questions in regard to the validity of the order, whether the points or objections were taken or not.

II. A married woman, like any other person, is liable to punishment, as for a contempt, for disobeying an order of the court.

1. She may be attached for disobeying a subpœna, for refusing to testify, or for disobeying any other valid order of the court or judge.

2. To hold that she cannot be imprisoned for refusing to obey an order to pay money or apply other property in discharge of judgments against her, would enable her in all cases by converting her tangible property into cash or choses in action, to put her creditors at defiance.

3. The provisions of the statute that no female shall be imprisoned on any process in any civil action founded upon contract, does not apply to process as for contempt.

(*a.*) The process of attachment for contempt is not deemed process in a civil action. It is in the nature of original process to punish for disobeying the order of the court.

(*b.*) When the disobedience affects the interests of parties, the court may use its power to punish, to recompense the party for the injury sustained. (2 R. S. 534, 535, 538, § 21; *People* v. *Nevins*, 1 Hill, 155.)

(*c.*) It is not process in an action upon contract. It is process to punish for disobeying a valid order.

III. The defendant in the process was not entitled to the jail liberties.

1. The commitment in this case was for disobeying the order of Judge MORGAN, directing her to pay the judgment and interest, with the costs of the proceedings.

(*a.*) This appears in the precept for commitment.

(*b.*) It also appears in the case, that the debtor had money

in her possession sufficient to pay the amount ordered to be paid.

2. The statute prescribes that all persons committed to any jail, upon process for contempt except on attachments for the non-payment of costs, shall be actually confined and detained within such jail until they shall be discharged by due course of law, and are not entitled to the jail liberties. (2 R. S. 433, § 40, 437, § 61.)

3. This clearly was not a commitment for non-payment of costs, and therefore the prisoner was not entitled to the jail liberties. (1 Code R. 98; *The People* v. *Bennett*, 4 Paige, 282.)

(*a*.) In the case in 4 Paige the commitment did not show that the money to be paid was not for costs, and hence the chancellor refused to attach the sheriff for allowing the prisoner the liberties of the jail.

(*b*.) The chancellor in his opinion assumes that when the precept is for the payment of costs *or other sums of money*, the prisoner is entitled to the jail liberties, but it is manifest that the attention of the chancellor was not directed to the language of the statute.

IV. The statute made it the duty of the county judge, upon the return of the sheriff, forthwith to remand the prisoner, and his order, therefore, was without jurisdiction.

1. The statute directs him forthwith to remand the prisoner, if it shall appear that he is detained in custody for any contempt specially and plainly charged in the commitment by some court or officer having jurisdiction to commit for such contempt. (2 R. S. 567, § 400.)

2. The contempt in this case was specially and plainly charged in the commitment.

(*a*.) The order made by Judge Morgan was set out in the commitment directing the payment of the judgment.

(*b*.) The validity of that order, as has been shown, cannot be questioned collaterally.

(*c*.) The commitment shows that the prisoner refused to comply with and obey the order, which refusal was plainly a contempt for which the court had authority to commit. (2

R. S. 535; *Reynolds* v. *McElhone*, 20 How. 454; *People* v. *Kelly*, 22 How. 309; *Seaman* v. *Dwyer*, 10 Barb. 523; 13 Abb. Pr. 459; *S. C.*, 1 Kern. 324; *People* v. *Nevins*, 1 Hill, 155, 165; *Brush* v. *Lee*, June T. Court of Appeals.

(*d.*) The case of *Seaman* v. *Dwyer*, holds that it is not necessary that the order should show that the prisoner had been in form adjudged guilty of contempt, it is sufficient that the facts show that he was in fact guilty of contempt.

3. An irregularity in issuing the attachment cannot be inquired into upon *habeas corpus*. The remedy is by motion to set aside the attachment.

4. The process need not recite all the proceedings giving jurisdiction. (11 N. Y. 324.)

V. The learned justice who read the opinion in the Supreme Court, held the proceeding before Judge MORGAN regular and valid, including the precept, and that it was issued against the prisoner for disobeying an order to pay money which she had in her hands, and yet he held that it was simply an execution in a civil action. It is submitted that this was erroneous.

1. It was held in the case of *Brush* v. *Lee*, that a similar precept was not only not an execution, but that it was issued to compel payment of a sum of money for which an execution could not be awarded for the collection of it.

2. If this precept can be deemed an execution, then of course the defendant could not be imprisoned at all under the Code, and upon its being returned *nulla bona*, she might be again examined under supplementary proceedings, and the same proceedings repeated *ad infinitum*.

3. The learned judge admits if the order had directed the judgment to be paid out of any particular fund, disobedience to such order would have been a contempt. With all deference it is submitted that this was precisely that case. It appeared before Judge MORGAN that she had some $900 in her possession, and he ordered her to pay the judgment. Her refusal to do so was clearly a contempt.

(*a.*) The order in the case of *Brush* v. *Lee*, was in the general form, that defendant pay the judgment and costs.

There was nothing in it designating any fund out of which it should be paid. This court held it was sufficient to justify a precept to commit to close custody.

(*b*.) The order in this case was in the same form, based upon the same fact, to wit, that the defendant had money which she refused to apply in satisfaction of the judgment.

4. But the order contained the alternative that she pay or that an attachment issue, and it was alleged as error because it contained the latter clause, that part of the order was affirmed and the propriety of it could not be called in question collaterally. (33 How. Pr. 337.)

The order or judgment of the Supreme Court and of the county judge should be reversed with costs, and the prisoner remanded to the custody of the sheriff.

*Lyon & Norton*, for the respondent.

1. When the commitment is for an alleged contempt for not obeying an order, it may, on *habeas corpus*, be examined and determined whether the prisoner is properly committed, and held by authority of law. (*People* v. *Nevins*, Hill, 164, 170, 171; *People* v. *Cassels*, 5 id. 164.)

(*a*.) When the return to a writ of *habeas corpus* shows a detainer under legal process, the only proper points for examination are the existence, validity and present legal force of the process. (*People* v. *Kelly*, 1 Abb. N. S. 435.)

(*b*.) In *The People* v. *McLeod* (4 Hill, 40, 401), Justice COWAN says: "The 2 Revised Statutes, 469, 2d edition, sections 40 and 41 (sections 55 and 56 of volume 3, 5th edition, page 887) requires us to examine the facts contained in the return, and into the cause of the confinement of the prisoner; and if no legal cause be shown for it, or for its continuation, we are to discharge him."

(*c*.) "The relief granted upon *habeas corpus* against defective convictions and commitments, is in some respects analogous to the relief obtained upon a writ of error. It is in one respect more desirable because it is more prompt in relieving the prisoner from imprisonment; but on the other

hand, it leaves the order or judgment in force." (4 Johns. 260; *In the Matter of Miller*, 1 Daley, 575; *S. C.*, 19 Abb. 394; Hurd on Habeas Corpus, 270.)

2. The facts set forth being admitted or not denied, the law of the case alone is to be inquired into, and the proceeding is the same as if the return was formally demurred to. (3 Hill, 658, note 28.)

(*a.*) "The party brought up may deny any of the material facts set forth in the return, or allege any fact to show, either that his imprisonment or detention is unlawful, or that he is entitled to his discharge; which allegations or denials shall be on oath; and thereupon, the court shall proceed in a summuary manner to hear," etc. (3 Hill, note 29.)

(*b.*) "When the return shows that the prisoner is legally detained on a civil process, he may show by affidavit that he is privileged from arrest." (Hurd on Habeas Corpus, 270.)

3. The following facts were established on the hearing before the county judge, viz.:

1st, That the judgment in the action in which the order was made, was obtained upon a cause of action arising upon contract.

2d, That the defendant and relator was at the time of the commencement of said action, the entry of the judgment, and still is, a married woman.

3d, That the judgment directs the payment of the amount of the same out of the separate estate or property of the said defendant or relator.

4. Proceedings supplementary to execution are proceedings in the original action. (15 How. Pr. 19, 142; 19 id. 560; 24 id. 137; 26 id. 57; 15 Abb. 307.)

5. The order of Judge MORGAN, under which the relator was imprisoned, does not convict or adjudge her guilty of a criminal contempt. It is simply a proceeding as for a contempt to enforce a civil remedy, and to protect the rights of parties to civil actions. (*Pitt, etc.*, v. *Davison*, Court of Appeals, reported in vol. 34 How. Pr., pp. 355, 373, etc.; 3 R. S. 5th ed., pp. 467, 470, 489.)

Blackstone (vol. 4, pp. 284, 285) says: "Those committed by parties to any suit or proceeding before the court, as disobedience to any rule or order, and in the progress of a cause, by non-payment of costs awarded by the court upon a motion, or the non-observance of awards duly made by arbitrators or umpires, after having entered into a rule for submitting to such arbitration. *Indeed, the attachment for most of this species of contempt, and especially for non-payment of costs, and non-performance of awards, is to be looked upon rather as a civil execution for the benefit of the injured party,* though carried on in the shape of a criminal process for contempt of the authority of the court—and therefore, it hath been held, that such contempt, and the processes thereon, being properly the civil remedy of individuals for a private injury, are not released or affected by a general act of pardon."

6. The relator, being a female, is not liable to arrest and imprisonment in any action founded on a contract. (R. S. 5 ed., p. 72, § 9.)

The liability of a female to imprisonment being contrary to the policy of the common law, and expressly forbidden by statute "in a civil action, except as prescribed in this act," (Code, § 178,) and "no female shall be imprisoned on any process in any civil action founded on contract."

The right to imprison this female, the relator, must be made apparent by *a plain legislative enactment*, and not by judicial construction. (Sec. 9, vol. 3 R. S., 5 ed., p. 725; *Hovey* v. *Starin*, 42 Barb. 435, 440.)

7. But if the relator could be imprisoned for the non-payment of a fine imposed by the court for a contempt, still, as the order made by Judge MORGAN is an order that she be committed until she pay the amount of the Crouse judgment and costs of supplementary proceedings, she was entitled to the jail liberties, and the order appealed from should be affirmed.

(*a*.) A party who is committed as for a contempt for the non-payment of costs or other sum of money ordered to be paid, is entitled to the jail liberties. (4 Paige, 282, 297; 3 R. S. 5 ed., p. 850, § 4.)

(*b.*) It is only where a party is committed for a criminal contempt that he is not entitled to jail liberties. (4 Paige, *supra;* 2 id. 103.)

(*c.*) The order under or by virtue of which Mrs. Wheeler was imprisoned, does not impose any fine upon her nor adjudge her guilty of a criminal contempt. It is a process to enforce payment of the judgment, and not to subject the party to punishment. (3 Paige, 43, 44; 9 id. 372.)

(*d.*) The order is a process for the benefit of the plaintiffs in the judgment, and not a proceeding on the part of the court to vindicate its power or dignity.

8. The whole of the proceedings supplemental to execution herein, are entirely without jurisdiction, and of no force or validity.

(*a.*) When the judgment roll orders the judgment to be paid out of the separate estate of a married woman, an execution against such estate is the only process that can be issued or taken thereon or thereby. It is a proceeding against the separate estate, and that only. The plaintiff in such a judgment can have no other or further remedy than the execution against the separate estate.

Section 12, chapter 460, page 849, Laws of 1862, is in these words: "In an *action* brought *by or against* a married woman, judgment may be given against her, as well for costs as for damages, in the same manner as against other persons, to be levied and collected of her separate estate, and not otherwise."

(*b.*) The return of the execution upon such a judgment, is evidence that she has no property, and is conclusive upon the plaintiff therein. (*Hovey* v. *Starin*, *supra.*)

(*c.*) The question of jurisdiction is always open to the party proceeded against.

WOODRUFF, J. The distinction between a commitment upon a precept issued for the disobedience of an order for the payment of a sum of money and a commitment upon a conviction of misconduct, punishable by fine and imprisonment, is very clearly indicated in the statute, and has

been repeatedly declared by the courts (2 R. S. pp. 534, 535, 536, 537.)

The proceedings are unlike, and the decision and penalties imposed are different.

A precept to commit (§ 4), for the non-payment of money, in obedience to a rule or order, issues of course, and *ex parte*, on proof by affidavit that personal demand has been made, and that the money is not paid. No proof that the party has money wherewith to pay, is necessary. The order for such payment being made, and presumptively made on sufficient grounds, it is not open to examination upon its merits to raise an excuse for disobedience; insolvency will not prevent the issuing of the precept, nor entitle the party committed to its revocation. Under the act of 1843, the party showing inability has, after commitment, an appeal to the discretion of the court, but in the first instance, whether there be actual contumacy or not, whether the party be able to pay or not, if a case has been presented in which the court had jurisdiction to make the order for the payment, the precept and the commitment follow if the money is not paid, whatever excuse the party may have for disobedience (2 R. S. 535, § 4.)

Nor is there any adjudication or conviction of misconduct, nor any thing in the nature of punishment imposed. The defaulting party is and can be subjected to no infliction punitory in its nature.

By whatever technical name such a precept be called, and whether the consequences in respect to the right to the liberties of the jail are or are not the same, the nature and the object of such a precept and of a *capias ad satisfaciendum* are identical, and the period of commitment and mode of satisfying their requirements in order to a release, are also identical.

A commitment of the other description is preceded (§ 5 *et seq.*) by a judicial inquiry into the question of the guilt or innocence of the party charged, in which he has an opportunity to appear and answer, and be heard in his defense; and the conviction is followed by punishment, punishment in form and in fact, the judgment pronounced is fine or im-

prisonment, or both, as the nature of the case may require, and where the misconduct whereof the party was convicted has produced injury to a party, such fine shall be at least sufficient to indemnify him. But though no such injury appears, the court may nevertheless impose a fine and imprisonment for the public wrong which has been done.

All this is a provision for the infliction of punishment for an offense, an offense tending to impair the efficiency of our courts in the administration of justice, to bring them into disrespect, and it may in some of the cases embraced within the statutes, be incidentally injurious to parties.

The statute itself calls it "punishment," by providing that where the offense be also indictable, and on indictment the offender is convicted, "the punishment already inflicted" shall be taken into consideration "in forming the sentence" of the court.

The process in the former case is strictly and purely remedial. In the latter it is punitive, and in most instances purely so.

By 2 Revised Statutes, 755, sections 7 and 8, persons duly sentenced to imprisonment upon conviction for any contempt or misconduct, cannot be let out of prison on bail, or otherwise, by the keeper of the prison, without lawful authority, but are to be kept in rooms separate and distinct from convicts under sentence.

In declaring who shall be entitled to the liberties of the jail, the statute designates every person who shall be in custody of the sheriff of any county by virtue

1. Of a *capias ad respondendum;* or,

2. Of an execution in a civil action; or,

3. By virtue of any attachment for the non-payment of costs in a civil action; or,

4. In consequence of a surrender in exoneration of his bail.

Whether a party committed by precept for the non-payment of money other than costs, is entitled to such liberties, depends upon the true construction of this statute, or, in other words, whether the precept in the present case was an execution in a civil action.

That a commitment upon a conviction and sentence to fine and imprisonment is not such an execution, is on all hands conceded.

1. The object of the precept and an ordinary *ca. sa.* are identical.

2. The form of the precept and a *capias ad satisfaciendum* out of chancery, are in every material respect, identical.

3. The prisoner is, in the terms of both, only held until he pays the money mentioned.

4. Judged by its office and purpose, and by its sole legal effect and operation, it is an execution against the body.

5. The use of the term "execution" does not necessarily import any precise form of process, and properly includes all processes which are the same in their purpose, office and effect.

In my judgment, the precept in the present case is within the designation in this statute, and upon that the whole question whether the person committed was entitled to the liberties of the jail, depends.

On first examination of this statute, I was much impressed by a thought suggested by the special provision therein for admitting to the liberties a person in custody by virtue of any attachment for the non-payment of costs in a civil action (subd. 3.)

The authority to commit for the non-payment of costs, is part of the same section which authorizes the precept to commit for the non-payment of a sum of money ordered to be paid, and it should apparently be treated as involving precisely the same legal consequences, and no other.

If then by force of the admission to the liberties of a person "held in custody by virtue of an execution in a civil action" (subd. 2), the party committed by precept in such case is entitled to the liberties of the jail, why was the third subdivision added—the case was already provided for—and if the legislature intended that a person committed by such a precept for the non-payment of money, why did they confine the third subdivision to the non-payment of costs?

Whether the commitment "by virtue of an attachment for the non-payment of costs," means to describe another

case than a commitment under the section we are considering, by precept, which is the process specifically described, may or may not be doubtful. But it was at one time questioned whether a person committed by virtue of an attachment for contempt, in not paying costs, was a person held in custody on civil process, within our early statutes, by which jail liberties were established.

It had been decided that such a commitment was civil process within those acts. (*Jackson* v. *Billings*, 1 Caines, N. Y. 252.) The phraseology of the statute was changed in the Revised Statutes, and the language above quoted was employed in the other subdivisions, and to prevent doubt, the case of an attachment for non-payment of costs was expressly provided for.

Upon the whole I do not think this circumstance sufficient to overcome the reasons for regarding the precept in question as an execution within the statute. The decision referred to tends to support this view in suggesting the distinction between the civil remedy to enforce an order of the court for the payment of money, and the punishment of a contempt, which is a proceeding criminal in its nature.

The question is very fully discussed by the vice-chancellor in *Van Wezel* v. *Van Wezel* (3 Paige, 38), where a party was committed by precepts for contempts, in not paying moneys ordered to be paid for temporary alimony. He applied for a discharge from imprisonment under the act authorizing the discharge of persons imprisoned by virtue of one or more "executions in civil causes," and the vice-chancellor held that such a precept was included in this description, and the chancellor declares that the process was "an execution in a civil cause." The identical question now before us, and arising on a precept issued in virtue of the same section of our statutes (2 R. S. p. 535, § 4.)

And in the *People* v. *Bennett* (4 Paige, 282), the chancellor reiterates, in reference to the question whether a party committed is entitled to the liberties of the jail, the distinction already stated between a commitment by precept for the non-payment of money and a commitment upon a conviction

and fine as punishment for a contempt in misconduct punishable by fine and imprisonment. In the latter case he decides that the prisoner is not entitled to the jail liberties, and declares that in the former "he is in execution in a civil action," and is entitled thereto. (See also *Patrick* v. *Warner*, 4 Paige, 397.)

I might have reposed upon these cases and the very clear and satisfactory opinion of Mr. Justice HOYT in the court below, but I became much interested in the question, and was greatly impressed by the elaborate and able argument of the counsel for the appellant, on the hearing of the appeal, and have perhaps unnecessarily occupied time without throwing new light upon the question.

Some of the remarks of Mr. Justice COWEN, in *The People* v. *Nevins* (1 Hill, 155), would, at first view, seem to indicate that there was no difference between a commitment by precept under the fourth section of the statute, and a commitment on conviction and sentence, by way of fine, for the contempt. But those remarks were made in reference to the validity of the commitment and the power of a supreme court commissioner to declare it invalid. There the proceeding was against an attorney, by attachment, to punish him for official misconduct, in not paying over moneys collected for his client, and it was on interrogatories and answer thereto, adjudged that a fine be imposed, and that the attorney be committed until the fine and costs be paid. In form the proceeding was for a contempt, punishable by fine or imprisonment, or both, and the prisoner was convicted and fined. The question whether in such case the commitment was an execution in a civil action, did not arise. The court intimate, that there was in that case an election to proceed summarily by precept under the fourth section, instead of by attachment, interrogatories, answer and fine.

It is not necessary, in this case, to decide that, where a party has obtained a judgment authorizing the collection of the amount out of the separate estate of a married woman, and it appears on examination supplementary to execution, that, with a view to defeat a recovery, or in order to retain the

fund, the married woman has taken it, whether in money or in other form, into her personal possession, so that it cannot be reached by execution, and an order being made that she deliver it to a receiver, or apply it in a proper form upon the judgment debt, she refuses—she cannot be proceeded against as for a criminal contempt, and punished by fine or imprisonment, or both, and without the privilege of the jail liberties.

It is doubtful, at least, whether that remedy is not available against the party herself, or against any third person in such, or a like case.

However this may be, such was not the proceeding which is here under examination. It was simply an order upon a married woman, a debtor in respect of her separate estate, to pay the debt on proof that she had money sufficient to pay it.

The *habeas corpus* act, though urged upon our attention, does not assist in determining whether the prisoner was entitled to the liberties of the jail, or not. (2 R. S. p. 562, *et seq.*)

The fortieth section, which was relied upon, requires the officer before whom a prisoner shall be produced, in obedience to the writ, to forthwith remand the party if it appear that he is detained in custody "for any contempt specially and plainly charged in the commitment, by some court officer or body having authority to commit for the contempt so charged."

So, also, he is required forthwith to remand the prisoner if it shall appear that he is detained in custody by virtue of any execution issued upon any judgment or decree of any competent court of civil or criminal jurisdiction.

And so, also (§ 41), it is his duty to remand whenever it appears that the prisoner is in custody by virtue of "civil process from any court legally constituted, or issued by any officer in the course of judicial proceedings before him, authorized by law," unless certain specified grounds for discharge from custody are found.

These provisions do not determine at all whether a party charged in execution is entitled to the jail liberties, and no more does it decide whether the party in custody for con

tempt, should be admitted thereto, nor whether the precept now in question is the commitment for contempt here referred to, or the civil process mentioned in section forty-one.

Section sixty-one of the article of the statutes, entitled "of escapes, and the liabilities of sheriffs therefor" (2 R. S. 437), does undoubtedly present the main question in a form which, in the absence of decided cases, and of other provision of the statutes, which, as heretofore construed, might seem in conflict therewith, strongly supports the argument that the prisoner, in a case like the present, if legally held at all, must be kept in close custody. Thus "all prisoners committed to jail upon process for contempt, or committed for misconduct in the cases provided by law, except on attachments for the non-payment of costs, shall be actually confined and detained within such jail," etc. This in the connection in which it stands, imports close confinement within the prison.

But this article immediately follows, and is a part of the same title as section forty, which provides who may be admitted to the liberties of the jail, and must be construed with it.

If the construction above given to section forty, and the cases cited in support of that construction are correct, then the contempt or misconduct mentioned in this section sixty-one, describes only the cases where the process is for the punishment of a party by fine or imprisonment, or both.

Notwithstanding the observations already made, I am not able to find legal warrant for the order which was made by the county judge, or for the affirmance thereof.

It is unquestionably the duty of the sheriff holding a prisoner in custody, who is entitled to the liberties of the jail, to accept a proper bond with sufficient sureties, and permit such prisoner "to go at large" within the limits of such liberties, but I do not discover that a judge before whom such prisoner may be brought on *habeas corpus* has any power or authority to give an order or direction to that effect.

The duty of the judge, on the hearing of the matter brought under examination by the *habeas corpus*, and the consequent

proceedings, is defined in the statute already referred to. (2 R. S. 563 *et seq.*)

"If no legal cause be shown for such imprisonment or restraint, or for the continuance thereof, such court or officer shall discharge such party from the custody or restraint under which he is held." (§ 39.)

"It shall be the duty of such court or officer, forthwith to remand such party" in the class of cases already above referred to. (§ 40.)

In cases in which a prisoner is held on a charge of crime, the officer, in certain cases, may let him to bail. (§ 43.)

"If the party be not entitled to his discharge, and be not bailed, the court or officer shall *remand him to the custody or place him under the restraint from which he was taken*, if the person under whose custody or restraint he was, be legally entitled thereto; if not so entitled, he shall be committed by such court or officer to the custody of such officer or person as by law is entitled thereto." (§ 44.)

Here is no warrant to the officer to take bail or security of any kind. The prisoner was not held on a charge of any crime, and the judge did not attempt to do so.

But on the other hand, he did "order and adjudge that the said Marinda C. Wheeler" (the prisoner) "is not entitled to her discharge."

Thereupon the peremptory direction of the statute applied, viz.: "that he shall *remand* the prisoner *to the custody, or place him under the restraint from which he was taken.*"

The order, however, proceeds to declare—"but that she is entitled to the liberties of the jail," and next conditionally to remand, thus, "and that she be remanded to the county jail of Wayne county, unless she give good and sufficient bail, to be approved by said sheriff, for the liberties of the jail."

And the order then proceeds to direct and require the sheriff, upon the tendering of such bail, to accept the same, and declares that thereupon the prisoner shall have the jail liberties.

I have not been able to discover that the officer had any

jurisdiction to make such an order. Perhaps I may have overlooked some statute, or other authority, but at present I can only say, that however it might instruct the sheriff in regard to his duty, it was, as an order, wholly without jurisdiction, and inoperative; it neither bound the sheriff to admit to the liberties, nor would protect him from liability for an escape, if he admitted the prisoner to the liberties. His liability, in such case, would depend upon the question whether (independent of such an order) she was entitled to be so admitted, and not whether he acted in obedience to such an order. No such order could be enforced against the sheriff, and he was still left to act upon his own responsibility. If this court should unite in an opinion that a person committed upon such precept, and for the same cause is entitled to the jail liberties, sheriffs might perhaps deem it safe to act accordingly, but not even this court can make a mandatory order directing them to take the bond therefor.

It is said, that in truth, the prisoner being a female, could not be arrested and held on such process, and therefore the officer should have discharged the prisoner (Code of Procedure, § 179.) The question is not before us. The people have not appealed from the order, and of course the appellants do not, and cannot raise it.

The order which was made was, however, without warrant of law. Having adjudged that the prisoner was not entitled to her discharge, he should have remanded her without condition.

On this ground, the judgment of affirmance should be reversed, but without costs.

CLERKE, J. (dissenting). I shall consider this case as if it was properly entitled in the proceedings by which it was brought to this court. It is, in fact, an appeal from the decision of the Supreme Court in a *certiorari*, upon proceedings in a writ of *habeas corpus* directed to the sheriff of the county of Wayne, to bring before G. W. COWLES, judge of the said county of Wayne, one Maria A. C. Wheeler, to inquire into the cause of her imprisonment. In those pro-

ceedings he made a certain decision which was taken to the Supreme Court by *certiorari* for review. The issuing of the writ was the commencement of a special proceeding, not an action, and should have been entitled, "In the matter of the *habeas corpus*," etc. The writ of *certiorari*, issued for the purpose of bringing the decision of the county judge into the Supreme Court for review there, was, in effect, an appeal from his decision, and did not constitute a cause of action against him. There was no claim or complaint against him, but the *certiorari* merely required him to certify the proceedings arising under the writ of *habeas corpus*, to ascertain if the said decision was according to law. The proceeding should, therefore, have retained the title which it had, or should have had, originally, namely, "in the matter of the writ of *habeas corpus*," etc.

I will now proceed with a summary of the facts:

October 15, 1866, Crowel and others recovered a judgment in the Supreme Court against Marinda Wheeler, a married woman, for $723.24. The place of trial was in Onondaga county. A transcript was duly docketed in Wayne county, where the said Marinda resided, and an execution was issued to the sheriff of that county, who returned it unsatisfied. The defendant was examined before a referee, under an order made by Mr. Justice MORGAN, in proceedings supplementary to the execution. Upon the report of the referee, from which it appeared that the defendant had $900 in cash in her possession, Mr. Justice MORGAN made an order, requiring her to pay the amount of the judgment and $40, costs, within ten days, or that, in default thereof, an attachment issue against her. She appealed from this order to the General Term, where it was affirmed. The question involved in that appeal was, whether an order of that nature could be issued against a woman. As there has been no appeal to this court from that order, the question cannot be entertained in the present appeal. The order was duly served upon the said Marinda, and, upon her refusal to comply, a writ was issued, commanding the sheriff to attach her, and commit her to the county jail, and detain her there in close custody, until she should

comply with said order. She was, accordingly, arrested and committed to the county jail. The county judge granted a *habeas corpus*, directed to the sheriff; and upon the return showing these facts, decided that said Marinda was entitled to the liberty of the jail, upon executing the proper bond; and he ordered her discharge from close custody upon executing such a bond. A *certiorari*, as we have seen, was sued out of the Supreme Court to reverse this order of the county judge; the plaintiffs in the judgment contending, that the defendant was not entitled to the jail liberties, and that Judge COWLES had no jurisdiction to discharge her from close custody. The Supreme Court affirmed the order of the county judge. From this order of the General Term, an appeal has been taken to this court.

In section 4 of the title of the Revised Statutes relating to contempts to enforce civil remedies (2 R. S. 535 marginal; 3 id. 850 5th ed.), it is provided: "When any rule or order of a court shall have been made for the payment of costs, or any other sum of money, and proof by affidavit shall be made of the personal demand of such sum of money, and of a refusal to pay it, the court may issue a precept to commit the person so disobeying to prison, until such sum, and the costs and expenses of the proceeding be paid;" and in the next section, it is provided: "In all cases, other than that specified in the last section, the court shall either grant an order on the accused party to show cause, at some reasonable time, why he should not be punished for the alleged misconduct; or shall issue an attachment to arrest such party, and bring him before such court to answer for such misconduct." The order to show cause and the attachment mentioned in this last section, are merely preliminary to an inquiry, by affidavits or interrogatories, to enable the court to determine whether the accused is guilty of the alleged misconduct; and it is only after such inquiry that the decision is final.

The order, to wit, "ordered by Mr. Justice MORGAN, requiring the sheriff to commit Marinda C. Wheeler to close custody," was not issued in conformity with this latter section. There was no order to show cause, as in *Brush* v. *Lee*, nor

was there any such attachment as the section contemplates; for this section provides, that "the sheriff shall bring the accused before the court to answer for such misconduct." It is, therefore, as I have said, merely preliminary. But the process in this case is conclusive, ordering the sheriff not to bring the accused before the court for further inquiry and for final adjudication; but it directs him to commit her and detain her in close custody until she shall comply with the order. The process, therefore, if allowable at all, is issued by virtue of section 4, of the title to which I have referred. Is this section applicable to orders made in proceedings supplementary to the execution? It certainly was applicable in all cases possible at the time this section of the Revised Statutes was adopted; and, if, in a proceeding by creditor's bill under the former practice, it was ascertained that the judgment debtor had any specific sum of money which he refused to deliver to the receiver, the Court of Chancery would, I think, have proceeded against him under this section. By section 302 of the Code of Procedure, it is provided, if any person disobey an order of the judge or referee duly served, such person may be punished by the judge as for contempt; so that by this provision, it was contemplated the accused was liable to the same mode of punishment, to which persons were liable, previous to the Code, for similar disobedience. I think, therefore, that this process was properly issued in conformity with section 4, of title 13, relating to proceedings as for contempts, etc. The only question that can arise is, whether a person, committed under this section, is entitled to the jail liberties. There are two decisions by the late chancellor of this State, which settle this question. I am not aware that they have ever been disturbed or even disputed. They seem to be based on a long current of decisions in England. (*Van Wezel* v. *Van Wezel*, 3 Pai. 38; *The People* v. *Bennett*, 4 id. 282.) It is there held, that the precept or attachment, under the said section, is a mere substitute for an execution against the body. In the last mentioned case, the chancellor says: "Where a rule or order of this court has been made, requiring a party to pay the costs of any pro-

ceedings or other sum of money, and he is committed for not paying the same in conformity with the 4th section of the Revised Statutes, which relates to proceedings as for contempts to enforce civil remedies, and to protect the rights of parties in civil actions, he is in execution in a civil action, or on attachment ·for not paying the same directed to be paid.   In such case he is entitled to the jail liberties."   " But," he adds, " the provisions of the Revised Statutes relative to the jail liberties, etc., do not extend to the case of a party who is committed for the non-payment of a fine, imposed upon him as a punishment for a contempt of the court."   In other words, if the proceedings are under section 5, as was the case in *Brush* v. *Lee*, the defendant is not entitled to the jail liberties ; but if the proceedings are under section 4, as in the case before us, the defendant is entitled to them.   The order of the county judge is, consequently, correct.

The order appealed from should be affirmed with costs.

HUNT, Ch. J., and GROVER, MASON, MILLER, BACON and DWIGHT, JJ., concurred in the final conclusion of· WOODRUFF, J., but were of opinion that the party committed was not entitled to the liberties of the jail.

Order of the Supreme Court, and of the county judge, reversed, without costs.