### In the Matter of Abram E. Watson.

(General Term, Third Department, March, 1872.)

A surrogate's power to enforce "all lawful orders, processes," &c., by attachment against the person (2 R. S., 221, section 6, sub. 4), does not authorize him to inflict a fine and then commit upon the fine.

The precept " used by the Court of Chancery in analogous cases " (id.), was the ordinary execution against the body in the nature of a *capias ad satisfaciendum.*

It seems that imprisonment by fine being the most punitive in its character, was purposely avoided by section 6, sub. 4, 2 R. S., 220.

It seems the practice of filing written interrogatories and giving the party an opportunity of answering them in proceedings for commitment is demanded only in cases where punishment can be inflicted by fine.

This matter comes up to this court upon certiorari to the Hon. William L. Learned (see *ante*, vol. 3, page, 408), a justice of the Supreme Court, upon an order made by him upon habeas corpus, by which order one Watson was released from imprisonment in the county jail of Rensselaer county for an alleged contempt in disobeying a decree of the surrogate of the county of Rensselaer, which directed Watson, as sole surviving executor of James Scudder, deceased, to pay to the persons named in the decree the sum of

$5,876.58, with interest from 26th December, 1807, for a fine inflicted upon him in that amount.

Watson, by the proper forms of law, procured from Justice LEARNED a writ of habeas corpus to obtain relief from this imprisonment, which writ was directed to the sheriff of Rensselaer county, in whose custody Watson then was in the jail of the county.

On the return of the habeas corpus the sheriff produced Watson and made a return that he detained and held him in custody by virtue of a precept or writ, which was subscribed and attested by the surrogate of Rensselaer county, and which, after reciting that an order had been made and entered in his court in the matter of the estate of James Scudder, deceased, in and by which it was ordered that Abram E. Watson, the sole surviving executor of the last will, &c., of the above named deceased, be committed to the common jail of the county of Rensselaer, there to remain, charged with the contempt mentioned in the order, until he should have paid the fine therein imposed upon him for his misconduct, amounting to the sum of $5,876.58, with interest, &c., and that a warrant issue to carry such order into effect. The warrant or writ then commanded the sheriff to take Watson and him safely and *closely* keep in his custody in the common jail " until he shall have fully paid the *fine herein* imposed as aforesaid (repeating the amount), with your fees hereon, or until the said Abram E. Watson shall be discharged by the further order of the said surrogate in his said court, or by due course of law." Duly attested and sealed.

The sheriff also returned a copy of the order which inflicted the fine upon which the warrant was directed, and which was dated 6th July, 1870.

This order recited that a decree had been made in the matter of the estate of Scudder, as before recited, and also recited that the surrogate had been informed that the sum so decreed had been personally demanded of Watson, and that he (Watson) had neglected and refused to pay the same; and further,

that another order had been made on the 1st February, 1868, directing that an attachment issue to the sheriff of Kings county, commanding him to arrest Watson, the executor as aforesaid, and bring him before the surrogate to answer for his misconduct in neglecting and refusing to pay the moneys so ordered to be paid. It further recited that Watson appeared on the day therein named and admitted *his refusal and neglect* to pay the moneys so ordered to be paid; and that no satisfactory excuse being made by him, it was thereupon ordered and adjudged that Watson had been guilty of the misconduct alleged, and that the misconduct was calculated to and did defeat, impede and prejudice the parties named to the amount adjudged due to them as aforesaid, " *which sum is hereby imposed upon him (the said Watson) as a fine,* for his aforesaid misconduct and *contempt;*" and it was further ordered that Watson be committed to the county jail of the county of Rensselaer, there to remain charged upon the contempt till he should pay the *fine,* together with the fees of the sheriff, unless sooner discharged by the surrogate; and that a warrant for that purpose issue to the sheriff of Rensselaer county. This was officially sealed and attested.

There was no issue of fact traversed upon this return. The judge, upon the writ of habeas corpus and return, discharged the prisoner from his arrest. Certiorari to this court.

*James Lansing,* for the relators.

*M. Hale,* for the respondent.

Present—MILLER, P. J., POTTER and BALCOM, JJ.

POTTER, J. The question to be decided in this case is one not only greatly complicated, but it involves questions of jurisdiction and power; it also involves one of the most valued natural rights of the citizen, the right of personal liberty. The writ of *habeas corpus ad subjiciendum* is employed, and its especial office is to vindicate the right to personal liberty. It is a high prerogative writ; not ministerially issuable, but is a writ of right, to be issued, upon proper foundation being

In the Matter of Abram E. Watson.

laid, under severe penalties to the magistrate to whom proper application is made.    It lies in all cases of imprisonment, by commitment, detention, confinement or restraint, for whatever cause or under whatever pretence, except in the cases where the statute forbids its issue. (2 Rev. Stat., 863, § 36 [22].) But when the writ has been so issued, it does not necessarily follow that there must be a discharge or release from imprisonment.    The power of the judge on the hearing is judicial, not ministerial, and his judicial discretion must be exercised according to law.    The duty, in all cases, is to grant release when the committing court or magistrate has acted without jurisdiction.    Whether jurisdiction has been shown, in any given case, is often, as in the case before us, a question of legal intendment and construction.    As presumptions are in favor of liberty, the court or magistrate whose process of commitment is brought under inquiry must have jurisdiction not only of subject-matter, but, especially in cases where personal liberty is restrained, must have jurisdiction of the person imprisoned.    If want of jurisdiction appears on the face of the process, it is void, as to everybody; not even the ministerial officer who executed it is protected.    If the magistrate who issues the process to imprison had not the right to issue such process, the imprisonment is illegal, although he may have had jurisdiction of the subject-matter. Confusion is sometimes created in tracing the lines between courts of original jurisdiction, or courts of record in which jurisdiction is always to be presumed, and inferior jurisdictions, where authority must be shown at every step, as well as the proper application of the statutes to the one case or the other.    This is especially so in cases of commitments for contempt.    In these cases there has been opened a still wider range for the examination of the question of jurisdiction than in 'other cases.    But the rule, in one respect, is the same, whether the process issue from superior or inferior courts. In each, if there was no competent court to render the judgment or decree to be questioned, the judgment and process is equally void.    The right to impeach jurisdiction extends to

every court, both directly and collaterally; though in one case the jurisdiction is first to be intended, in the other not. (*People* v. *Nevins*, 1 Hill, 154.) And though superior courts may imprison for contempt, committed in the presence of the court, without warrant, inferior courts or magistrates cannot commit without a formal warrant; and, since the Revised Statutes, contempts committed by the non-payment of money, in disobedience of a rule or order, require that the warrant of commitment must specially and plainly set forth the contempt charged in the commitment. (2 Rev. Stat., 567, marg. p., § 55 [40], sub. 3.)

Power is conferred by statute, upon surrogates, to direct and control the conduct and settle the accounts of executors and administrators; to enforce the payment of debts and legacies, and the distribution of the estates of intestates, &c. (2 Rev. Stat., 220, &c., § 1, sub. 3 and 4), and power is also conferred upon them " to enforce all lawful orders, process and decrees of their courts by *attachment* against the persons of those who shall neglect or refuse to comply with such orders and decrees, or to execute such process; which attachments shall be in form similar to that used by the Court of Chancery in analogous cases." (Id., p. 222, § 10.)

No power is found in the statute conferred upon surrogates to inflict punishment for such disobedience, with greater severity or to a greater extent than is conferred upon courts of record, and this power, as well as the form of its exercise, is conferred and directed and limited by statute. Surrogates' courts not being courts of record, possessed no common-law powers to this end. The power given " to enforce orders, decrees and process," also directs *how* it may be done; and the remedy being a statute remedy, I think he can pursue no other. Now, there are *two classes of contempts* recognized in the statutes, the punishment prescribed for each class of which is different; but the confounding of the manner of punishment of which is the occasion of all the apparent conflict that appears in the reported cases. These two classes of contempts are, first, criminal contempts, described

In the Matter of Abram E. Watson.

in 2 Revised Statutes, 278, marginal page, section 10, and the punishment of which and the extent of which are therein prescribed and limited; and, second, proceedings as for contempts, *to enforce* civil remedies and protect the rights of parties in civil cases. (2 Rev. Stat., 534, 535.) In this second class of contempts, section 1 of the statute, in its eight subdivisions, enumerates the character of the contempts, and the persons who may commit them, and the circumstances under which they may be committed, and also the manner of punishment, to wit, by fine and imprisonment, or either. These are cases where the neglect, violation of duty or misconduct defeats, impairs, impedes or prejudices the rights or remedies of a party, and include *orders for the non-payment of money in cases where, by law, execution cannot be awarded for the collection of such sum*. The third section, again, *excepts cases of disobedience to a "rule or order requiring the payment of money."*

The fourth section provides for just the case which has been excepted and excluded from the provisions of the previous sections, to wit, orders or decrees for the payment of money. It not only excepts this particular case from the before permitted punishments, but it prescribes the manner of proceeding in such a case. Prescribing this remedy, and this proceeding, by the well known rule of construction of statutes, it excludes all other remedies. What is the remedy thus prescribed? Section 4 is as follows: "When any rule or order of court shall have been made for the payment of costs, *or any other sum of money*, and proof by affidavit shall have been made of the personal demand of such sum of money, and of a refusal to pay it, the court may issue a precept to commit the person so disobeying to prison until such sum and the costs and expenses of the proceeding be paid." This remedy is clear and ample, and the punishment is imprisonment. But by what process? He can imprison for no other cause, and in no other manner than in the manner authorized by the statute. Where, as in this case, the statute prescribes but one method, he can pursue no other. His court is one of limited

jurisdiction; his powers in this respect are all conferred by statute. The statute which authorizes him to issue a *precept* to commit to prison for this particular disobedience does not authorize him to *inflict a fine* and then commit upon the fine. His execution, or *precept*, is the ordinary execution against the body, in the nature of a *capias ad satisfaciendum.* This was the precept used in the Court of Chancery in such cases. (See *People* v. *Spalding*, 10 Paige, 287; *Van Wezel* v. *Van Wezel*, 3 Paige, 43, 44.) And he may bring him into court by attachment to show cause why he should not be so imprisoned. And if he happens to be in any other county, the statute has also expressly provided a remedy to meet *that* case. He may issue such attachment into any such county. (Chap. 460, Laws of 1837, § 66.) No power is wanting to enable him to bring the party into court and to proceed in the manner which the statute authorizes, as we have above pointed out. He has the power to imprison, but only in the one way pointed out by statute. The defendant doubtless prefers that way. That way is far less punitive than upon a fine. He has the right to be imprisoned legally, and a right to be discharged if he is not so imprisoned. If we are right in this view, the judge who discharged the prisoner was right in not remanding him back to custody.

This is the meaning and construction of the statute which provides that the surrogate shall have power to enforce all lawful orders, process and decrees of his court by attachment against the persons of those who shall neglect or refuse to comply with such orders and decrees, &c. (2 R. S., 220.); that is, he shall have this power in the prescribed way. This excludes every other way.

The nature of the imprisonment by *fines* is the most *punitory* in its character of any that can be inflicted, and this was expressly intended to be avoided by section 4 of the statute, which we have copied above; otherwise this section is meaningless, if not absurd. The meaning or interpretation we have given it is exactly that which it received in the Court of Appeals, in the case of *The People* v. *Cowles* (4 Keyes, 46).

In the Matter of Abram E. Watson.

Judge WOODRUFF, who delivered the opinion of the court in that case, speaking of the character of the *precept* to be issued under this section 4, says: "By whatever name it (the process) may be called, the nature and object of such a *precept* and of a *capias ad satisfaciendum* are identical, and the period of commitment and mode of satisfying their requirements in order to a release are also identical." Whereas, he adds, "that a commitment of the other description (under the other sections) is preceded by a judicial inquiry into the question of guilt or innocence of the party charged, in which he has an opportunity (by interrogatories, &c.) to appear and answer and be heard in his defence ; and the conviction is followed by *punishment*, punishment in *form* and in fact ; the judgment pronounced is *fine* or *imprisonment*, or both ; and where the misconduct whereof the party was convicted has produced an injury to a party, such fine should be sufficient to indemnify him. But though no such injury appears, the court may nevertheless impose a *fine* and imprisonment for the public wrong he has done." "All this is a provision for the *infliction* of punishment for an offence, an offence tending to impair the efficiency of our courts in the administration of justice, to bring them into disrespect," &c. The learned judge then adds the construction, which is conclusive of this case before us: "The process in the former case" (under section 4) "is strictly and purely *remedial*. In the latter" (sections other than 4) "it is *punitive*, and in most instances purely so."

I have cited at much length this opinion, which, in any view, is conclusive that the construction I have given is the correct one. (See, also, *Brush* v. *Lee*, 6 Abbott, N. S., 56.)

The case upon which the relator relies to sustain the power of the surrogate to imprison by the infliction of a fine, is the case of *Seaman* v. *Duryea* (11 N. Y., 324). An examination of that case will show that it is not applicable. The complaint was for false imprisonment. The defendant set up in answer that the imprisonment was under a precept issued by the surrogate for a contempt in disobeying an order of the surrogate. It does not appear from the case whether

the imprisonment was upon a *fine* or upon a precept issued under section 4, a *ca. sa.;* probably the former, because he was examined upon interrogatories, and was adjudged guilty of contempt. The plaintiff demurred to the answer. The demurrer was held good, because the precept which was set forth and upon which he was imprisoned, the Court of Appeals say, recited proceedings over which the surrogate had jurisdiction. This was *prima facie* sufficient. There was the right to *imprison*, under whichever section he was imprisoned. The case was decided upon demurrer, which admits the allegations of the answer in their strongest interpretation.

But it is claimed, on the part of the relator, that when Watson was brought before the surrogate upon the attachment he admitted his neglect and refusal to pay the money directed in the decree. Certainly that was equivalent to having it proved by affidavit, nothing more. It did not admit a contempt of which he had not been guilty. It did not admit a contempt for which the surrogate had no power to fine him; he admitted the fact as it was, which authorized the surrogate to imprison him by a precept in the nature of a *ca. sa.*

So, too, upon the other side, it is claimed that the surrogate had no power to imprison without first filing written interrogatories and giving the party the opportunity of answering them. This is equally error. That practice is demanded only in cases where *punishment* can be inflicted by fine. (*People* v. *Cowles, supra*, page 46.)

While I have no sympathy in favor of executors or trustees who have withholden or squandered the estate which it is their duty to protect and to pay over on decree, we must, on the other hand, see to it that they be dealt with in accordance with the letter and spirit of the law. We must presume that the decree to pay over, made by the surrogate, is legal and just. We have shown his right to punish, in the way the statute provides, even by imprisonment; but that in the case before us he had not the authority to inflict a fine for the delinquency and imprison upon that.

The result is, that the order of the judge made on habeas corpus must be affirmed.

Order affirmed.