IN THE MATTER OF ABRAM E. WATSON, Respondent, *v.* MARY NELSON, Appellant.

Surrogates' courts, being courts of limited jurisdiction, in proceedings to punish for contempt, are confined to the powers expressly conferred by statute; and not being courts of record, the provisions of the Revised Statutes in regard to the powers of courts of record in such proceedings to enforce civil remedies have no application to them, save so far as applied by express statutory enactment.

Disobedience of a surrogate's decree or order directing the payment of money generally, not out of a specific fund, by an executor, to the persons interested in the estate, is not a contempt for which a fine can be imposed and the party committed to close custody, as for a criminal contempt.

*It seems* that, for the enforcement of their orders and decrees directing the payment of money, the only proceedings against the person which can be taken by surrogates' courts are those authorized to be taken in the late Court of Chancery in analogous cases, *i. e.*, if a final decree, an execution against the person; if an interlocutory order, a precept of commitment—in both which cases the party is entitled to the benefit of the jail liberties.

The provision of the act of 1837 concerning executors, etc. (§ 67, chap. 460, Laws of 1837), which renders certain provisions of the Revised Statutes applicable to attachments issued by surrogates, does not enlarge the powers of surrogates in regard to the cases in which they may punish for contempts.

(*People* v. *Cowles* 4 Keyes, 46 ; S. C., 3 Abb. Ct. of Ap. Decisions, 507,) distinguished.

An executor, committed to the county jail by virtue of a warrant of commitment issued by a surrogate upon an order adjudging said executor in contempt for disobedience of a final decree, directing him to pay over a sum specified to various parties named, was discharged by order in proceedings on *habeas corpus.* The General Term, on writ of *certiorari,* affirmed the proceedings. *Held,* that one of the parties named in the surrogate's decree as entitled to a portion of the sum, who was not named in the writ of *certiorari,* had no such standing in the proceedings as to entitle her to appeal to this court.

(Argued April 16, 1877 ; decided May 22, 1877.)

APPEAL by Mary Nelson from order of the General Term of the Supreme Court in the third judicial department, affirming, upon *certiorari,* an order of a justice of said court in proceedings by *habeas corpus,* discharging the respondent from imprisonment in the county jail of Rensselaer county, where he was in custody under a commitment issued by the surrogate of said county for an alleged contempt.

The facts appear sufficiently in the opinion.

*James Lansing,* for the appellant. The surrogate was authorized to enforce his decree herein by attachment against the person of respondent, and to treat his refusal to obey the same as a contempt. (1 K. & R., 321, § 11; 1 R. L., 448; 1 Greenl., 367, § 13; *Doran* v. *Dempsey,* 1 Bradf., 492; 3 R. S. [5th ed.], 362, 851, 852; *People* v. *Cowles,* 3 Keyes, 65; 3 Abb. [Ct. App. Dec.], 518; 2 R. S., 433, § 40; 437, § 61; id., 93, § 56; *Seaman* v. *Duryea,* 10 Barb., 532;

Redf. L. & Pr. Surr. Cts., 36; *Hosack* v. *Rogers*, 10 Paige, 604; *Timpson's Estate*, 15 Abb. [N. S], 235.) The commitment was sufficient and proper in form. (*People* v. *Nivins*, 1 Hill, 154; 11 N. Y., 324; *People* v. *Racley*, 24 id., 80; *Albany City Bank* v. *Schermerhorn*, 9 Paige, 372; *Clapp* v. *Lathrop*, 23 How., 441.) It was the duty of the officer before whom the respondent was brought under the *habeas corpus* to remand him. (2 R. S., 557, § 40; subd. 3, § 42; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y., 559; *People ex rel. Wolf* v. *Jacobs*, 5 Hun, 428; *People ex rel.* v. *Cassels*, 5 Hill, 164; *In re Baker*, 11 How., 48; *In re Prime*, 1 Barb., 340; *In re Percy*, 2 Daly, 530; *People* v. *Cowles*, 4 Keyes, 38; *Ford* v. *Ford*, 41 How., 169.)

*Samuel Hand*, for the respondent. The appellant has no standing in this court to appeal from the General Term order. (*In re Bristol*, 16 Abb., 397; *Martin* v. *Kanouse*, 2 Abb., 390; *Foster* v. *Prince*, 8 id., 407; *People ex rel. Lee* v. *Lynch*, 54 N. Y., 681; *De Ruyter* v. *St. Peters*, 3 Barb. Ch. 119.) The order was not appealable. (*Battermann* v. *Finn*, 40 N. Y., 340; *People* v. *Delbecchio*, 18 id., 352.) The surrogate acted without jurisdiction. (*People* v. *Corlies*, 1 Sandf., 228; *Sheldon* v. *Wright*, 1 Seld., 497; *Bolten* v. *Jacks*, 6 Robt., 166; *People* v. *Nevins*, 1 Hill, 154; *People* v. *Barnes*, 12 Wend., 492; 2 R. S., 276, § 1; id., 220; id., 278, § 9; id., 534, § 1; *Pfaff* v. *Kinney*, 1 Bradf., 1; *Doran* v. *Dempsey*, id., 490; *Dayton on Surr.*, 6; *In re Seaman*, 7 N. Y. L. Obs., 70; *People* v. *Spalding*, 10 Paige, 287; *People* v. *Bennett*, 4 id., 282; *Patrick* v. *Warner*, id., 397; *Van Wezel* v. *Van Wezel*, 3 id., 43, 44; *People* v. *Cowles*, 4 Keyes, 46, 49; *Albany City Bank* v. *Schermerhorn*, 9 Paige, 373; *Hosack* v. *Rogers*, 11 id, 603, 606; *Saltus* v. *Saltus*, 2 Lans., 9.)

Rapallo, J. This appeal might properly be dismissed without going into the merits of the case, on the ground that the present appellant has no such standing in the proceeding

as to entitle her to bring the appeal. She was not named in the writ of *certiorari* as a relator, and it is only by reference to the exhibits attached to the return that it can be discovered that she may possibly be interested in the result.

But, as it was intimated upon the argument that the court would pass upon the question of the legality of the commitment upon which the prisoner is sought to be held, we proceed to do so.

The commitment set out in the return to the writ of *habeas corpus* recites that, by an order of the surrogate of the county of Rensselaer, dated the 6th of July, 1870, made in the matter of the estate of James Scudder, deceased, it was ordered that Abram E. Watson, sole surviving executor of the will of Scudder, be committed to the common jail of the county of Rensselaer, there to remain charged with the contempt mentioned in said order, until he should have paid the fine therein imposed upon him for his misconduct, amounting to the sum of $5,876.58, with interest, and commands the sheriff to take the prisoner and keep him safely and closely in his custody until he shall have paid the fine, etc.

This commitment, it will be observed, requires that the prisoner be kept in close custody, and, if valid, deprives him of the benefit of the jail liberties (2 R. S., 433, § 40; *People* v. *Bennett*, 4 Paige, 282), and the question now presented to us is, whether that species of process was authorized by law in the present case.

The commitment does not, upon its face, charge or specify any contempt or misconduct. It is only by reference to the order therein referred to that it can be ascertained whether any contempt or misconduct had been charged or adjudged.

This order recites, in substance, that, by a decree of the surrogate, dated Dec. 26, 1867, the respondent, as sole surviving executor, etc., was ordered to pay to various parties named, one of whom was the appellant, the sum of $5,876.58, for their shares in the estate of the testator, and that, although personally demanded of the respondent, he had neglected and refused to pay the same; that he had been attached, and

appeared before the surrogate, and admitted his refusal and neglect to pay the money, and made no satisfactory excuse for its non-payment; and thereupon it was ordered and adjudged that he was guilty of the misconduct alleged against him, and that such misconduct was calculated to and did defeat, impede and prejudice the rights and remedies of the said persons, and he was again ordered to pay said sum, with interest, which sum was imposed upon him as a fine for his aforesaid misconduct and contempt, and he was ordered to be committed, etc.

It thus appears that the cause of the commitment, which is denominated therein a contempt, for which a fine was imposed upon him, was the non-payment of a sum of money decreed to be payable by him, as sole surviving executor, to the persons interested in the estate of his testator. It does not appear that this payment was ordered to be made out of any particular fund under the control of the respondent, nor that he has been guilty of any contempt or contumacy other than the failure to pay a decree rendered against him personally, for a debt adjudged to be due by him as executor, to the persons entitled to the estate of his testator.

That he is liable to attachment and imprisonment for a debt of this nature is not denied, but whether his failure to pay it is a contempt of court, for which a surrogate is authorized to impose a fine and commit him to close custody for non-payment thereof, is the question now before us.

The powers of surrogates to punish contempts, and to enforce their orders and decrees, are defined in 2 R. S., 221, § 6. By subdivision 2 of that section they are empowered to punish disobedience to subpœnas and refusals to testify, in the same manner as courts of record in similar cases. By subdivision 4, To enforce all lawful orders, process and decrees, by attachment against the persons of those who shall neglect or refuse to comply with such orders and decrees, or to execute such process; which attachments shall be in form similar to that used by the Court of Chancery in analogous cases. By subdivision 6, To preserve order in court during

any judicial proceeding, by punishing contempts which amount to an actual interruption of business, or to an open and direct contempt of their authority or person, in the same manner and to the same extent as courts of record.

These are all the powers conferred by the Revised Statutes upon surrogates' courts which relate to the subject now under discussion. Being courts of limited jurisdiction, surrogates' courts are confined to the powers thus defined; and not being courts of record, the provisions of the Revised Statutes in regard to the powers of courts of record in proceedings for contempt, to enforce civil remedies, have no application to surrogates' courts, except so far as applied by express statutory enactments.

The provisions relative to the punishment of refractory witnesses, and to preserving order in court, confer upon surrogates' courts the powers possessed by courts of record generally. The proceedings for enforcing decrees and process are declared to be similar to those used in the Court of Chancery in analogous cases.

The act of 1837, chap, 460, § 67 (which renders applicable to attachments issued by surrogates the 10th, 12th and 13th sections, and sections 16 to 32 inclusive of title 13, chap. 8 of the 3d part of the Revised Statutes), does not enlarge the powers of surrogates in regard to the cases in which they may punish as for contempts. It merely renders those sections applicable to attachments and process which, by the then existing law, surrogates might issue, and relates to the mode of procedure thereon.

We have been referred to no other statutory provisions relative to surrogates' courts affecting this case, and the appellant concedes that there are none.

The statutes already referred to show that, for certain specified contempts, which are criminal in their nature, surrogates' courts were vested with the powers of courts of record to punish by fine and imprisonment. That, for the enforcement of their orders and decrees, they were empowered to proceed by attachment against the person according

to the forms used by the Court of Chancery in analogous cases. It would be in direct contravention of the statutes to hold that, for the enforcement of their orders or decrees for the payment of money, surrogates could use more stringent process than that used by the Court of Chancery, and it would have been strikingly incongruous if the legislature had authorized them to do so. The question upon which the determination of this case depends, therefore, is, what was the form of proceeding against the person in the Court of Chancery in cases analogous to the present one, viz., non-compliance with a final decree directing the payment of money?

According to the practice of the English Court of Chancery, it appears that, when the payment was ordered to be made within a certain time, specified in the decree, the non-payment might be punished as a contempt. Late statutes have there been passed affording other remedies for the enforcement of such decrees, but, in the view which I take of the case, it is not material to go into the subject of the English practice, as the whole matter seems to be regulated by our own Revised Statutes, and with the express purpose, as declared by the revisers, of distinguishing between contempts which are really such, and those acts which have been treated as contempts for the mere purpose of enforcing some civil remedy, and for the purpose of defining and limiting a power which they say is more liable to abuse, and in England has been abused more than any other possessed by the courts. (Rev. notes, 5, Stat. at Large, 760.) By bringing together the various provisions of the Revised Statutes bearing upon the question, it will be found that the proper proceeding against the person to be used in the Court of Chancery in a case analogous to the present one is quite plain.

By 2 R. S. 183, § 104, it is provided that the court " may enforce performance of any decree or obedience thereto by execution against the body of the party against whom such decree shall have been made," or against the goods, etc.

It is obvious that a decree like the present for the payment

of a sum of money generally, is capable of enforcement by execution against the body.

By 2, R. S. (534, title 13, chap. 8, part 3), entitled "of proceedings for contempts to enforce civil remedies and to protect the rights of parties in civil actions," it is declared, section 1, that "every Court of Record shall have power to punish by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct by which the rights or remedies of a party in a cause or matter depending in such court may be defeated, impaired, impeded or prejudiced, in the following cases:    *    *    *    "  (Subd. 3), parties to suits attorneys, solicitors and all other persons, for the non-payment of any sum of money ordered by such court to be paid, " *in cases where by law execution cannot be awarded for the collection of such sum,*" etc.

This is a plain declaration that punishment as for a contempt cannot be inflicted in cases where execution can issue, viz : on a final decree for a sum of money.   And that it was intended to limit as well as to define the power, is expressly stated in the revisers' note before referred to (5 Stat. at L., 760), where they say that in this section an enumeration of the general cases has been made, as well to define *as to limit* a power which is liable to abuse, etc.

By section 4, of the same title, provision is made for the enforcement of interlocutory orders for the payment of money. It enacts that when any rule or order of a court shall have been made for the payment of costs, or any other sum of money, and proof by affidavit shall be made of the personal demand of such sum of money and of a refusal to pay it, the court may issue a precept to commit the person so disobeying, to prison, until such sum and the costs and expenses of the proceedings be paid.

Section 5 provides that in other cases of misconduct, an order to show cause or an attachment shall be issued, to require the party to answer for the misconduct.

These sections are clearly applicable to the Court of Chancery.   The decisions of that court so treat them, and it is

embraced in the provisions, being expressly declared to be a court of record. (2 R. S., 276; 2 R. S., 163.)

It thus appears that, at the time of the passage of the act relative to surrogates' courts, the only proceeding against the person, authorized to be taken in the Court of Chancery for a neglect or refusal to pay money ordered or decreed to be paid, was, if decreed by a final decree, an execution against the body. If ordered by an interlocutory order, a precept of commitment, which is held to be equivalent to an execution in a civil action. Upon both of these processes the defendant was entitled to the jail liberties, while, if committed for a contempt, he was not. (*Van Wezel* v. *Van Wezel*, 3 Paige, 43; *People* v. *Bennett*, 4 Paige, 282; *Patrick* v. *Warner*, 4 Paige, 397; *People* v. *Spaulding*, 10 Paige, 287.) And, if the debt for which the decree was rendered was founded on contract, the party could not be imprisoned, even on a decree in equity, since the passage of the act abolishing imprisonment for debt. (*Hosack* v. *Rogers*, 11 Paige, 604.)

We have been referred to no case, and I have found none since the Revised Statutes, in which disobedience of a decree or order merely directing the payment of money by an executor, trustee or other party has been adjudged to be a contempt, for which a fine could be imposed and the party committed, as for a criminal contempt, to close custody. It was the object of the enactments as proposed by the revisers and adopted by the legislature, to distinguish between the two classes of cases; and, while they preserved the necessary powers of the courts to maintain their own dignity and punish all willful disobedience or contumacy, not to allow even the Court of Chancery to visit a mere failure to pay a sum decreed, with more severity than was allowed to the courts of law, whatever may have been the origin of the debt. The only cases referred to on the part of the appellant, as establishing a contrary doctrine, are those of *People* v. *Cowles*, imperfectly reported in 4 Keyes, 46, and S. C., 3 Abb. Ct. of App. Dec., 507; and *Seaman* v. *Duryea*, 11 N. Y., 324.

*People* v. *Cowles*, as reported in 3 Abb. Ct. of App. Dec., 507, shows that a material element was contained in that case which does not exist in this. There the defendant was ordered to pay over a specified fund which was adjudged to be in his hands. It was not merely a decree or order for the payment of money generally. In *Seaman* v. *Duryea*, no such question was raised as is presented in the case now before us. The form or character of the process was not discussed. The questions adjudged were that, on the settlement by a surrogate of the accounts of a guardian, he had power to adjudge the balance due and decree its payment, and that this decree could be enforced against the person; propositions which are not disputed in this case. But whether the proper process was a commitment as for a contempt, or a precept or execution, was not discussed or considered.

The power of the surrogate to enforce his decree being dependent upon the practice of the Court of Chancery, and that practice not authorizing a commitment, as for a contempt, to close custody, in cases analogous to the present one, we must hold the form of commitment to have been unauthorized; that for non-payment of a sum adjudged by a final decree, upon which the defendant is liable to imprisonment, the proper process is an execution against the body in the form prescribed by the Court of Chancery. (See note 4, appended to Rules in Chancery, 2 Hoff. Ch. Pr., 92.) For non-compliance with an interlocutory order, a precept of commitment, such as was used in that court, under 2 R. S. (535, § 4), or an execution under Laws of 1837 (chap. 460.)

There being no merits in the appeal, it should be dismissed with costs, on the ground first stated.

All concur, MILLER, J., taking no part.

Appeal dismissed.