29  567
40ap102

## FRANCIS X. MEYERS, SHERIFF, ETC., RESPONDENT, *v.* JAMES A. BECKER, APPELLANT.

*Interlocutory and final judgments — right to issue process for the arrest of the defendant — when the invalidity of the process may be set up in an action for an escape.*

In an action brought by a judgment-creditor against the debtors and their assignee to set aside a general assignment as fraudulent, a judgment was entered on October 17, 1878, declaring the assignment to be void as to creditors, directing it to be set aside and requiring the assignee to account for the value of the property received by him and pay the same over to a receiver to be appointed, who was directed to apply the moneys so to be received as was in said judgment directed. Thereafter and on January 31, 1879, an order was made confirming the report of a referee stating the account of the assignee, and requiring the assignee to pay over certain sums of money specified in the order to the receiver and other persons therein designated. On March fourteen an order purporting to be made upon the motion of the receiver was entered. It did not recite that notice had been given to the assignee, but stated that after demand made he had neglected and refused to pay the moneys mentioned in the order. It directed that a precept issue to commit him to the county jail until he paid the amounts named.

*Held*, that under the circumstances of the case the court had no power to issue process against the assignee's person until an execution had first been issued against his property, and that the invalidity of the process might be set up, by one who signed the bail bond with the assignee, in an action brought upon the bond for the latter's escape.

That the provisions of section 4 of 2d Revised Statutes, 535, to the effect that "when any rule or order of the court shall have been made for the payment of costs or any other sum of money, and proof by affidavit shall be made of the personal demand of such sum of money and of a refusal to pay it, the court may issue a precept to commit the person so disobeying to prison," apply only to orders strictly interlocutory.

That the order of January 13, 1879, was not an interlocutory order.

APPEAL from a judgment in favor of the plaintiff, entered upon a decision made at Special Term in Onondaga county, in an action upon a bail bond executed by the defendant as bail to secure the jail liberties to one Alpheus C. Beckwith, a person imprisoned under a precept issued in pursuance of a special order of this court for non-compliance with an order to pay over money.

Prior to the 3d day of May, 1878, Pierce & Haggerty made an

assignment of their property to one Alpheus C. Beckwith, as assignee, in trust for the benefit of their creditors.

George T. Hawley and others, judgment-creditors of the said Pierce & Haggerty, in May, 1878, commenced an action in this court against Pierce & Haggerty, and Beckwith, the assignee, to have the assignment declared void as against creditors and compel Beckwith, as assignee, to account for the property and moneys in his hands, and to have the same applied in payment of his judgment. The defendants appeared by an attorney and sought to uphold the assignment as valid.

The action was referred to a referee to hear, try and determine. Upon his report an interlocutory judgment was entered declaring the assignment void as to creditors, and that the same be set aside as fraudulent; that Beckwith, the assignee, should account for the value of the property which came to his hands, and finding the value to be $3,000 that he be enjoined from selling and disposing of any of said property received by him under the assignment, or paying out any of the proceeds derived from a sale of the property, and that a receiver be appointed of the effects of the said Pierce & Haggerty, which should be in their hands or the hands of said Beckwith, and that from the proceeds of such property and effects he was directed to pay the costs and disbursements of the action, which were taxed and adjusted at $107 to pay the plaintiffs their judgment of $178.35, and interest thereon from January 5, 1878, and bring the balance of the proceeds into court subject to its further order and direction.

This judgment was entered and docketed in Onondaga county clerk's office, the place of trial, October 17, 1878. Thereafter and on the 29th day of October, 1878, by an order made at Special Term a receiver was appointed, as provided for in the interlocutory judgment, and a referee was appointed to take and state the account of the said Beckwith, and to determine what costs, expenses, charges and disbursements, if any, were properly allowable to him, and to be deducted from the sum which he was by the decree to account for and pay over to the receiver These orders were duly entered in Onondaga county clerk's office. The referee made a report dated January 20, 1879, which was filed but is not printed in the case.

By an order of the court made at Special Term on the 31st day

of January, 1879, on motion of the plaintiff's attorney, the referee's report was confirmed and the defendant's attorney appeared and was heard upon the motion.

It was for non-compliance with the terms of this order that the precept was issued to arrest and imprison Beckwith. The decretal part of the order is here copied *in hac verba:* " That the report of C. D. Prescott, Esq., the referee herein, bearing date January 17, 1879, be and the same is hereby in all respects confirmed; also ordered, that the defendant Alpheus C. Beckwith, as assignee, pay over forthwith to John E. Brandigee, Esq., the receiver herein duly appointed and qualified, the sum of three thousand dollars, less the sum of three hundred and fifty dollars, and the further sum of forty dollars, which by the report of said referee said defendant Beckwith as such assignee was allowed from the three thousand dollars which he was directed to pay over to said John E. Brandigee as such receiver; that said Beckwith pay to Messrs. Risley & Stoddard, attorneys, the above named sum of three hundred and fifty dollars which was allowed to him by said referee for the purpose of paying and discharging the indebtedness of said Risley & Stoddard, against him as such assignee, for defending him as assignee in the actions brought against him; and that he also pay William A. Matteson, Esq., the above sum of forty dollars which was allowed to him by said referee for the purpose of paying and discharging the indebtedness of said Matteson, against him as such assignee, for conducting the defense in this action; that the amount which the defendant Alpheus C. Beckwith is hereby decreed to pay over forthwith to said John E. Brandigee, receiver therein, is the sum of two thousand six hundred and ten dollars. Further ordered, that the said John E. Brandigee, as such receiver, pay out of the funds so delivered to and held by him, besides and in addition to the amounts heretofore allowed and ordered, pay out of said fund the fees of the referee for said last mentioned reference fixed at ten dollars, and the further sum of ten dollars as and for the costs of this motion to the said plaintiffs herein."

The form of this order was approved by the judge who presided, and certified by the clerk and directed to be entered in the Onondaga county clerk's office, and the same was received in the latter clerk's office and entered on the first day of February. 1879.

On the 14th day of March, 1879, an order was entered at Special Term purporting to be upon the motion of the receiver, and without reciting that any notice was given to Beckwith, but stating that a demand had been made of him to pay the moneys mentioned in the last named order, and that he had neglected and refused to do the same, and directing that a precept issue to commit him to the county jail until he paid the sum of $2,610 as required by such order. The precept was issued to the sheriff of Oneida county.

Beckwith was arrested by the sheriff, and he, with the defendant herein, gave the bail bond sued upon.

*Risley & Stoddard*, for the appellant.

*C. D. Adams*, for the respondent.

BARKER, J.:

The judgment entered upon the report of the referee was not final, although it did determine all the most disputed questions at issue between the parties to the record.

The real purpose of the suit was to set aside the assignment made by the judgment debtors, and to reach the property and assets in the hands of their assignee, and to appropriate the same to the payment of the judgment which the plaintiff had procured against the assignors.

The value of the assets which came to the hands of the assignee was fixed and determined by the interlocutory judgment, and the only questions which remained to be investigated and determined were the allowances which he was entitled to have deducted from the gross sum which he had received.

The order entered upon the report of the referee, to whom it was referred, to take and state the account of the assignee, did dispose of all the remaining questions necessary to be determined and inserted in the final judgment.

After the entry of this order nothing remained to be litigated in the action. Upon the payment of the sums therein directed, nothing more could be demanded of Beckwith. Upon the entry of this order in Onondaga county clerk's office, where the interlocutory judgment was filed, as between the parties to the record, it was, in substance and effect, a final judgment, although there was

not an enrollment as required by the course and practice of the court. Without any further order from the court, the clerk, at the request of the plaintiff's attorney, or without it, could have attached to the interlocutory judgment all the subsequent orders, which would have been an enrollment of the decree, such as is usually and customarily made in such cases.

The practice pursued in this case seems to be in substantial compliance with the provisions of sections 1212 to 1223, inclusive, of the Code of Civil Procedure. The provisions of these sections are similar in effect to the rules and practice of the old Court of Chancery. Mr. Barbour, in his work on Practice, says: "A decree does not, strictly speaking, become a record of the court until it has been enrolled ; and although the court itself, after it has been duly settled and entered, treats it as a foundation for ulterior proceedings, it is not considered of a sufficiently permanent nature to entitle it, in other courts, to the same attention that is paid by one court of record to the records of other courts of the same nature." (1 Barb. Ch. Pr. [2d. ed.], 341.)

Since the adoption of the Code, final judgments in suits in equity may be docketed and enforced in the same manner as actions at law, and many of the provisions of the Revised Statutes, relating to the enforcement of decrees in equity, are superseded and have become inoperative.

In *Geery* v. *Geery* (63 N. Y., 252), it was held that where money judgments are rendered in equitable actions, such as actions for the foreclosure of liens, for the partition of real estate, for specific performance, and *for accounting*, such judgments are required to be entered, docketed and enforced in all respects like judgments rendered in actions at law. In the same case it was further held that where the judgment required money to be paid to a receiver, who was not a party to the suit, the court could order the judgment for the sum directed to be paid, to be docketed in his favor and enforced by execution.

In *Miller* v. *Miller* (7 Hun, 208) it was also held that all judgments for the payment of moneys in actions of an equitable nature could be enforced by execution.

There is no doubt but what Beckwith may be imprisoned for non-payment of the moneys which he was directed to pay over to the

receiver, in view of the nature and character of the debt established against him, but, by the provisions of the Code, an execution against his property must, in the first instance, be issued and returned unsatisfied.

The provisions of the Revised Statutes relating to the enforcement of decrees in equity, being superseded by the Code, are not a justification for issuing a body execution in the first instance. Under these statutes the court could enforce performance of any decree by execution against the body of the party against whom the decree was entered, or by execution against his goods and chattels. (2 R. S., 183, § 104.) The party entitled to the process could, at his option, in the first instance, issue an execution against the body of the party directed to perform the decree. *The Matter of Watson* v. *Nelson* (69 N. Y., 536) is not an authority for holding that these provisions of the Revised Statutes are now in force and can be resorted to for the enforcement of judgments in equity actions. That case pertained to the mode and manner of enforcing decrees for the payment of moneys entered in a Surrogate's court, and it was held that that court had the same powers as formerly existed in the Court of Chancery, and these provisions of the statute were in force so far as to compel a resort to the same, to enforce the orders and decrees of a Surrogate's Court.

If, however, we are mistaken in the views which we have presented, that the order confirming the referee's report and fixing the sum which Beckwith was required to pay to the receiver was not in effect a final judgment, so far as the parties to that suit were concerned, we are still of the opinion that the precept which was issued thereon was wholly unauthorized, for the reason that the order was not interlocutory in any proper sense of the term, but was a determination of the court, in the form of a decretal order, upon which interested parties could take steps for the entry of final judgment, and was intended for that purpose and none other.

The chief object and purpose of the action was to reach the moneys in the hands of the assignee derived from the assignment; and this order determines the amount and directed him to pay the same over to an officer of the court. All the other issues and questions had been determined against the parties to the assignment and

were embraced in the interlocutory decree, and this was the sole and single inquiry remaining for determination.

Upon this order and the interlocutory judgment final judgment could have been entered without any .further directions from the court. Interlocutory orders are made to secure some end and pur-pose necessary and essential to the progress of the suit, and generally collateral to the issues formed by the pleadings and not connected with the final judgment. Every direction of a court made in an action is an order, unless it is contained in a judgment. (Code of Civil Pro., § 767.) This corresponds in all respects with section 400 of the preceding Code. The distinction between an order and a judgment seems to be this, that an order is a decision of a motion and a judgment is a decision of a trial. Where an order is entered sustaining or overruling a demurrer to an entire pleading, without any leave to amend, it is substantially a judgment for the reason that the successful party is entitled to judgment thereon, and it is a final determination of the rights of the parties. (*Hoffman* v. *Barry*, 2 Hun, 52.) These views are in harmony with section 1200 of the Code of Civil Procedure defining a judgment to be either interlocutory· or a final determination of the. rights of the parties.

The plaintiff relies upon the provisions of section 4, chapter 8, part 3, title 13 of the Revised Statutes (2 R. S., 535), as authority for issu-ing the precept directing the arrest and imprisonment of Beckwith. This section reads as follows : " When any rule or order of the court shall have been made for the payment of costs or any other sum of money, and proof by affidavit shall be made of the personal demand of such sum of money and of a refusal to pay it, the court may issue a precept to commit the person so disobeying to prison until such sum and the costs and expenses of the proceeding be paid." ·

It is conceded that this section was in force at the time the pre-cept in this case was issued, and it was so held by this court in *Strobridge* v. *Strobridge* (21 Hun, 288), in all instances where the provisions of the section are applicable. This section of the statute only applies to the enforcement of orders which are strictly interlocutory. And such is the tenor of all the authorities.

We have examined all the cases to which the learned counsel for the plaintiff refers, and we find they pertain to interlocutory orders only, and do not involve questions embraced within the issues, and

determined on the trial and embraced in a final decree. (*Van Wezel* v. *Van Wezel*, 3 Paige, 38 ; *The People ex rel. Hawley* v. *Bennett*, 4 id., 282 ; *The People ex rel. Backus* v. *Spalding*, 10 id., 287 ; *Strobridge* v. *Strobridge*, 21 Hun, 288 ; *In the Matter of Watson*, 69 N. Y., 536.)

In the latter case, referring to the same fourth section, the court say " that provision is there made for the enforcement of interlocutory orders for the payment of money."

I have been unable to find any case where the courts have directed or upheld a precept under the provisions of the fourth section — where the order was not purely interlocutory in its nature and character, and intended to be such.

The process upon which Beckwith was arrested and committed was unauthorized and void.

For an escape the plaintiffs in the other suit could not have maintained an action against the sheriff, for he could have pleaded the want of authority in issuing the precept upon which he arrested Beckwith, as a full and complete defense.

Judgment is reversed and judgment ordered for defendant, with costs of trial and of this appeal.

Present — SMITH, P. J., HARDIN and BARKER, JJ.

Judgment reversed and judgment ordered for defendant, with costs.