

IN THE MATTER OF WALTER P. HESS.

*Assignment set aside — the assignee cannot be required, by proceedings for contempt, to pay over a sum of money found to be due from him to a receiver appointed in the action brought to vacate the assignment.*

An assignment, made by Alice Hazard, for the benefit of her creditors, to Walter P. Hess, having been set aside as fraudulent, the assignee was required to account for the assigned estate, and to pay over the property remaining in his hands to a receiver appointed in the action brought to set aside the assignment. Upon the report of a referee in that action it was ordered that Walter P. Hess. pay over to said receiver the sum of money mentioned in the order ; having failed to pay over which, he was imprisoned for a contempt of court.

In this proceeding, to inquire into the cause of his imprisonment, it was:

*Held,* that section 2268 of the Code of Civil Procedure, authorizing the commitment of an offender who refuses to obey the order of the court requiring the payment of costs or a specified sum of money, was qualified by subdivision 3 of section 14 of the Code, so that a party to an action or special proceeding could only be punished by way of fine or imprisonment for the non-payment of a sum of money when an execution could not be issued for the collection of that sum.

That the order in this case was capable of being enforced by execution, under section 1240 of the Code of Civil Procedure.

Where the party is required to pay over an ascertained and specific sum, as distinguished from a specific or particular fund, the remedy is by execution.

That the fact that the money was to be paid to a receiver in no way affected or changed the liability of the petitioner to punishment, as the money could be collected by execution, issued upon a judgment entered for its recovery, and be directed to be paid by the sheriff, after its collection, to the receiver.

WRIT of *certiorari* to inquire into the cause of the imprisonment and detention of Walter P. Hess.

*Lucien Birdseye,* for the relator.

*D. S. Riddle,* for the respondent.

DANIELS, J. :

The writ of *certiorari* was not issued under the authority of title 2, article 7 of chapter 16 of the Code of Civil Procedure. But it was issued under article 3 of title 2 of chapter 16 of the Code, whose functions and office are the same as the writ of *habeas corpus.* And it has the sanction chiefly of section 2041 of the Code as well as of other sections in the same article containing references to these writs. Each is equally effectual where the objection exists that there

is no legal cause for the imprisonment of the petitioner. The motion to dismiss the writ on the ground that it was issued without. legal authority is, therefore, without foundation, and the legality of the petitioner's detention must be inquired into. He was the assignee in a general assignment made by Alice Hazard for the benefit of her creditors. That assignment was set aside as fraudulent in two actions brought by judgment-creditors of the assignor charging that. to have been the nature of the assignment. And under the decision. made the assignee was required to account for the assigned estate before a referee who was nominated to take the account, and to deliver and pay over the property remaining in his hands to the receiver appointed in this action. The accounting was had before the referee who reported a sum of money to be due from the assignee on account of the property received by him under the assignment.

This report, upon the hearing of exceptions filed by the assignee, was confirmed on the 25th of January, 1888, and in the order it was adjudged that Walter P. Hess forthwith pay to Rowland E. Beers, the receiver named and appointed in the above entitled action, the sum of $728.92, being $638 principal and ninety dollars and ninety-two cents interest thereon mentioned in said report, and that he also forthwith pay to said receiver the fees of the referee and stenographer and such other disbursements as have been made or necessarily incurred in said accounting to be taxed by the clerk on notice, and also the interest on the sum awarded by said report according to section 1235 of the Code of Civil Procedure, and take the receipt. of said receiver therefor. The section in this manner referred to provided only for the addition of interest, and it is not important to consider it to determine the legality of the proceeding.

The assignee failed, upon demand, to pay over the money, and he was then required to show cause why he should not be punished for disobedience of the order already mentioned, and on the hearing, which afterwards followed, a further order was made reciting the direction contained in the order of January, 1888, and adjudging the petitioner to be in contempt and imposing a fine upon him amounting to the sum of $1,111.53, and then directing the sheriff of the county of Kings, or of the county of New York, to take the body of the petitioner and commit him to the common jail of the county and keep him detained therein until he should pay

to the receiver this sum of money, together with ten dollars costs of the application and the fees of the sheriff.

These orders seem to have been made upon the conclusion that the case made out was within section 2268 of the Code of Civil Procedure. That section has directed that a warrant may be issued to commit an offender to prison who neglects or refuses to obey an order of the court, requiring the payment of costs or of a specified sum of money, after the court shall become satisfied that a personal demand has been made therefor and that payment has been refused or neglected. But the broad language of this section has not been left unqualified by other provisions of the Code. It has, on the contrary, been provided by subdivision 3 of section 14 of the Code, as it was under the preceding statutes, that a party to an action or special proceeding shall only be punished by way of fine and imprisonment for the non-payment of a sum of money when an execution cannot be awarded for the collection of that sum. And this has been further declared by section 1241 of the Code, directing that where a judgment cannot be enforced by execution, as that has been prescribed in the preceding section, there the party refusing and neglecting to obey its mandate may be punished for a contempt of the court and its observance enforced in that manner.

The order or judgment directing the payment of this money was capable of being enforced by execution, for by section 1240 of the Code a judgment for a sum of money in favor of either party, or which directs the payment of a sum of money, may be enforced by an execution. These enactments are so broad as to include the class of cases where a sum of money has been recovered by one party against another, or has been directed to be paid by the judgment, and consequently that class of cases is not within the general language of section 2268 of the Code already mentioned. But after a right has accrued to recover the money either a final order or judgment must be entered and an execution issued for the collection of the amount. The order in this case was of this description. It did not direct the payment by the petitioner of any specific money he might have in his hands or under his control, but it was for the payment of money generally. It was for an ascertained sum as distinguished from a specific or particular fund required or directed to be paid over; and where that is the order

the remedy of the party entitled to the money against the person legally bound for its payment is a judgment and execution. It may issue against his property solely, or in a case not arising upon contract against his person also, if the amount cannot be collected from his estate. The one or the other of these remedies is that which the law has prescribed as the means to be used by the creditor for the collection of the amount required to be paid.

This question was considered very fully in *Meyers v. Becker* (29 Hun, 567). In that case a very similar order was made directing the payment of money by an assignee after the assignment had been set aside as fraudulent. The assignee failed to pay the money, and after the usual proceedings taken against him for that failure, a precept was directed to be issued to commit him to the county jail until he paid the amount named. That was held to be unauthorized and unlawful, and upon appeal to the Court of Appeals, this view was sanctioned and affirmed in 95 New York, 486. In the consideration of that case it was held that the legal course of proceeding required the entry of a judgment and the issuing of an execution for the collection of the indebtedness, and that the requirements of the law on this subject could not be evaded by resorting to an order committing the assignee to prison for his failure to comply with the direction of the order.

This right of imprisonment, by way of proceedings for contempt, was fully considered in the *Matter of Watson* (69 N. Y., 536). There the party was imprisoned by a precept of the surrogate for a failure to comply with an order directing generally the payment of a sum of money; and the subject of the right to imprison for not paying was quite fully examined in the opinion of the court, and it was there said that "we have been referred to no case, and I have found none since the Revised Statutes, in which disobedience of a decree or order, merely directing the payment of money by an executor, trustee or other party, has been adjudged to be a contempt for which a fine could be imposed and the party committed as for a criminal contempt to close custody." (Id., 544.) And the same construction of the statutory provisions contained in the Code, which, in their essential features, are like those contained in the preceding statute, was adopted and followed in *Baker v. Allen* (23 Hun, 356); *Gray v. Cook* (24 How., 432), and *Miller v. Miller* (7 Hun., 208).

The imprisonment of the petitioner, under the authority of these orders, has neither the sanction of the statutory provisions nor of the cases decided under them; but it was wholly unauthorized.

The fact that the money was to be paid to the receiver in no way changed the liability of the petitioner to punishment, for the money could be collected by execution issued upon a judgment entered for its recovery and directed to be paid by the sheriff, after its collection, to the receiver. That practice has the sanction of the case of *Meyers* v. *Becker* (*supra*), and that was the only avenue which the law has provided for the collection of the money directed to be paid by this assignee. (*Geery* v. *Geery*, 63 N. Y., 252, 255.) No warrant of commitment, as that has been contemplated by the provisions of the Code, appears to have been issued for the arrest and imprisonment of the petitioner. But from the return of the sheriff to the writ of *certiorari* it appears that he has been arrested and imprisoned under and by virtue of the order adjudging him in contempt, and imposing a fine upon him. But without placing any stress upon the absence of a commitment, it is sufficient, for the purposes of the present decision, to say that no legal foundation was presented upon which the petitioner could be adjudged to be in contempt and directed to be imprisoned for the failure or refusal to pay this sum of money. The order, so far as it contained this direction, was wholly unauthorized, and beyond the jurisdiction of the court, and where that is found to be the case it follows that the party imprisoned under the direction is held in custody without legal authority, and is entitled to be relieved by virtue of the writ of *habeas corpus* or the writ of *certiorari* issued in place of that writ. (Code Civil Pro., § 2033, subd. 1, 4, 5.) That is the case of this petitioner, and being unlawfully imprisoned he cannot, as a condition of his right to be discharged, be required to stipulate that he will not sue for false imprisonment. His right to be set at liberty is absolute and unqualified, and the court cannot subject him to the performance of any condition for the enjoyment of that right.

An order should be entered directing the sheriff to discharge him from custody.

BRADY and BARTLETT, JJ., concurred.

So ordered