### HARRIS v. ELLIOTT et al.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

CONTEMPT—JUDGMENT—DISTRIBUTION OF TRUST FUND—FAILURE TO COMPLY THEREWITH.

Code Civ. Proc. § 14, subd. 3, and Id. § 1241, authorize a court of record to punish a party to an action or special proceeding for contempt for nonpayment of money adjudged to be paid, in a case where execution cannot be awarded. *Held*, that since the judgment directing a trustee to distribute funds held by him as such to certain designated persons, in specified amounts, could not be enforced by execution, such trustee was liable to punishment for contempt for refusing to make the payments as directed.

Barrett and Rumsey, JJ., dissenting.

Appeal from special term, New York county.

Action by Richard H. Harris against George Elliott and another, as executors, and others (Elizabeth C. Walker, as administrator of the estate of Thomas M. Wheeler, deceased, impleaded). From an order committing the plaintiff for contempt for failure to comply with a judgment directing him to distribute a trust fund as decreed, he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Otto C. Wierum, for appellant.
Everett P. Wheeler, for respondents.

INGRAHAM, J. The action was commenced for a determination as to whom a certain sum of money held by plaintiff, as trustee, should be paid. The amended complaint alleges that in September, 1888, one John Elliott was acting as trustee for certain named persons, and as their attorney in fact had recovered, by compromise, and then held for them, certain property in the city of New

York, certain securities, and the proceeds of the sale of certain other property; that in certain actions specified the said John Elliott set up a claim, as assignee of one Charles A. De Chambrun, for 12 per cent. of the gross amount recovered for the defendants; that said claim was contested, and was decided adversely to said John Elliott, who had appealed from the judgment; that on September 10, 1888, an agreement was made between those entitled to the money and the said Elliott, by which the sum of $5,000 was to be held to await the determination of that claim, and to be disposed of in accordance with the disposition to be made thereof; that subsequently a mortgage to secure the sum of $10,875 was transferred to the plaintiff, who executed an instrument whereby he declared that he held such mortgage to secure the sum of $3,500 to Riggs & Co., and to secure a deposit of $7,500 in a trust company as security for fees of the late John Elliott, "and upon said payment and deposit will reassign said mortgage to said Wheeler"; that subsequently, in March, 1893, the plaintiff paid over to George Elliott and George L. Elliott, as executors of John Elliott, deceased, the sum of $1,072.05 from the proceeds of said mortgage, and retained from said proceeds the sum of $350 due to the plaintiff from Riggs & Co., and $750 due to the plaintiff from the executors of said John Elliott, deceased; and the complaint then alleged that "this plaintiff has collected the balance due on said mortgage, and now has in his hands the sum of ten thousand seven hundred and forty-two $38/100 dollars, and holds the same, together with interest on said sum from March 9, 1893, subject to the rights and interests of the parties hereto, and to the fees of the plaintiff herein." The complaint further alleged, on information and belief, that "the defendants George Elliott and George L. Elliott, as executors of the last will and testament of John Elliott, deceased, claim the sum of $5,-577.95, with interest at 5% from October 13, 1889, from said sum; and that the defendants Riggs & Co. claim the sum of $3,150, with interest at 5% from October 13, 1889; and that the defendant Pierre De Chambrun, as administrator of the estate of Charles A. De Chambrun, and Elizabeth C. Walker, as administratrix of the estate of Thomas M. Wheeler, claim an interest in the moneys in the hands of this plaintiff, the proceeds of said mortgage, and have notified said plaintiff of said claims;" and that the plaintiff is ready to deposit the money in his hands in court, or to make such other disposition of the same as the court may direct. And the plaintiff demands judgment that the amounts owing to the defendants Riggs & Co., and to George Elliott and George L. Elliott, as executors of the last will and testament of John Elliott, deceased, and to Pierre De Chambrun, as administrator, and to Elizabeth C. Walker, as administratrix, if any, be ascertained in this action.

The defendants answered this complaint, setting up these several claims to the fund in the hands of the plaintiff; and by a supplemental complaint the plaintiff alleged a stipulation entered into in this action, whereby it was stipulated that, by way of compromise and settlement of this action, "the plaintiff now denying any trust relation as between himself and the defendants De Chambrun

and Wheeler, and they asserting such trust relation, and a claim against the fund in this action, and against the plaintiff as trustee thereof, that this action be compromised and settled by the payment of the sum of $8,077.96 on or before January 15, 1897, in full settlement of the amounts claimed by the defendants George L. Elliott and George Elliott, as executors of the estate of John Elliott, deceased, and the defendants Riggs & Co.; and that the plaintiff pay to Pierre De Chambrun, as administrator of Charles A. De Chambrun, the sum of $1,164.40, within ninety days from date, and to Elizabeth C. Walker, as administratrix of the estate of Thomas M. Wheeler, the sum of $1,170.20, within four months from date; and that, upon the respective payments being made by the plaintiff herein, the action be discontinued, without costs, or that a decree be entered to the foregoing effect, without costs, at the option of the plaintiff. This stipulation is without prejudice to the claim aforesaid made by defendants, and reserving all their remedies against the plaintiff." That, in pursuance of said agreement or stipulation, the plaintiff paid to the defendants George Elliott and George L. Elliott, as executors, and to the defendants E. F. Riggs and others, the sum of $5,000, and to the defendant Pierre De Chambrun, as administrator, the sum of $1,164.40, which sums the said defendants, respectively, have accepted and retained, and continue to retain the same, without returning, or offering to return, the same to the plaintiff. The supplemental complaint then alleges certain indebtedness of the executors of John Elliott, Riggs & Co., and Elizabeth C. Walker, as administratrix, to the plaintiff, and demands judgment that it be determined that the action has been compromised and settled by the stipulation before mentioned, and that the balance of $3,077.96 remaining unpaid and reserved by said stipulation be applied to the payment of the demand of the plaintiff on account of such indebtedness. Some of the defendants demurred to such supplemental complaint, which demurrer was sustained, and some of the defendants served an answer thereto, and the action came on for trial at special term. The court found that the plaintiff, having a balance of the trust fund in his hands, commenced this action, specifying the fund and the claim upon it, and that a trustee could not, as against the beneficiary of the fund which he held in trust, offset a personal claim, and that this stipulation, before referred to, which the plaintiff did not perform, could not avail him to change this rule of law; and the court directed judgment for the defendants Riggs & Co. and George Elliott and George L. Elliott, as executors, in the sum of $3,077.96, with interest and costs from January 20, 1897, and in favor of the defendant Walker, as administratrix, for the sum of $1,170.20, with interest from April 14, 1897, and with costs from that date, and upon this decision judgment was entered directing plaintiff to pay to defendants the sums specified within 10 days after service of a copy of the judgment.

It also appeared that on or about December 7, 1898, a certified copy of the judgment, with notice of entry thereof, was duly served upon the plaintiff personally, and that on December 9, 1899, the

time for the plaintiff to make payment under the decree was extended to and including 10 days from the service of said judgment with notice of entry; that no payment had been made by the plaintiff in accordance with said judgment at any time, though said 10 days had long since expired, and payment had been demanded; that an appeal had been taken by said Harris to this court from said judgment, where said judgment was duly affirmed, and notice of the judgment had been served upon the plaintiff's attorney; that on June 5, 1899, a demand had been duly made upon the plaintiff for the payment of the said sum, but no part of the same was paid; that the clerk of the county of New York had refused to docket the judgment against the plaintiff, upon the ground that the judgment was not docketable under the laws of this state, as the money due thereon was not immediately payable under its terms. An order was granted requiring the plaintiff to show cause why he should not be committed for contempt in refusing to comply with this judgment, and to pay the amount therein directed to be paid. The plaintiff, in reply, does not deny that the judgment was served upon him, or allege that he has complied with its provisions. He denies that the action was brought by him as trustee of certain funds alleged by the complaint to be in his possession, and alleges that, on the contrary, the summons and complaint and the judgment show that the action was brought by him in his individual capacity. He denies that the judgment and decree, entered on the 7th day of December, 1898, is one enforceable by contempt proceedings, under section 1241 of the Code of Civil Procedure, and he makes a general denial that he has refused to pay the amount of the said judgment, or any part thereof. The court below granted an order committing the plaintiff for contempt, and the only question presented upon this appeal is whether this judgment is enforceable by contempt proceedings.

By subdivision 3 of section 14 of the Code, a court of record has power to punish, by fine and imprisonment, or either, a party to an action or special proceeding, an attorney, counselor, or other person, for the nonpayment of a sum of money ordered or adjudged by the court to be paid, in a case where by law execution cannot be awarded for the collection of such sum. By section 1241 of the Code, it is provided that a judgment may be enforced where the judgment is final, and cannot be enforced by execution, as prescribed in the previous section. By section 1240, it is provided that a final judgment may be enforced by execution, where it is for a sum of money in favor of either party, or directs the payment of a sum of money; and by section 1241 it is provided that a judgment may be enforced by serving a certified copy thereof upon the party against whom it is rendered, or the officer or person who is required thereby, or by law, to obey it, and, if he refuses or willfully neglects to obey it, by punishing him for a contempt of the court, where the judgment is final, and cannot be enforced by execution, as prescribed in the last section, or where the judgment requires the payment of money into court, or to an officer of the court, except where the money is due upon a contract, express or implied, or as damages

for nonperformance of a contract. "In a case specified in this subdivision, if the judgment is final, it may be enforced as prescribed. in this section, either simultaneously with, or before or after the issuing of an execution thereupon, as the court directs." These two sections must be considered in connection with section 1246, which provides for a case in which the clerk of the court can docket a judgment. It is there provided that the clerk must, when he files a judgment roll, upon a judgment rendered in a court of which he is clerk, docket the judgment by entering, in the proper docket book, the sum recovered or directed to be paid, in figures. The sections of the Code that follow then provide that the judgment so docketed shall be a lien upon real property. And by section 1272 it is provided that "this article applies only to a judgment wholly or partly for a sum of money, or directing the payment of a sum of money, and to an execution issued upon such a judgment." By section 1365 it is provided that an execution against property can be issued only to a county in the clerk's office of which the judgment is docketed.

Reading all these sections together, it would appear that it was the intention to assimilate the enforcement of equity judgments for the recovery of a sum of money to judgments at law for the recovery of a sum of money by one of the parties to the action as against the other; but where a fund is in court to be distributed, and where the judgment provides for such a distribution, these provisions in relation to docketing a judgment, whereby one party is directed to pay to another party to the action a sum of money, do not apply. It is quite true that where a party is sued in a representative capacity, and it is found that he is indebted to the parties to the action, and he is directed to pay to such parties the amount of such indebtedness, such a judgment comes within section 1240 of the Code, and is a judgment directing the payment of a sum of money. But where a party brings a sum of money into court, alleging that he holds it subject to the order of the court, and asks for directions as to the persons to whom he shall pay the fund, it then becomes a fund in court; and a judgment directing the distribution of such fund thus held in court, as the property of those to whom the court shall adjudge it belongs, is not, in the sense intended by these sections of the Code before cited, a judgment directing a party to pay a sum of money to another. In this action a trustee comes into court asking the aid of the court to distribute a fund in his hands which he alleges that he holds as the money of those entitled to it, and asking the aid of the court to determine the person or persons to whom it belongs. By this position he obtains a distinct advantage. In his original complaint, the plaintiff expressly alleges that he has collected the balance due on said mortgage, and now has in his hands the sum of $10,742.36, and holds the same, together with interest on said sum from March 9, 1893, subject to the rights and interests of the parties hereto and to the fees herein. Then, after stating the claims of the various parties to this fund, the plaintiff alleges that he is ready to deposit the money in court, or to make such other disposition of the sum as the court may direct. There is nothing in this record to show that the plain-

tiff does not still hold this fund as the property of the defendants, and is not now able to pay the money thus held, in compliance with the judgment. If the plaintiff still held the mortgage, and brought his action to have it determined as to whom he should transfer it, and he was directed to transfer it to a party to the action, it would not be doubted that the judgment could be enforced by contempt. If the proceeds of the mortgage are held by the plaintiff in the place of the mortgagee, there is no reason why a different rule should apply. A judgment directing the distribution of such a fund could not be enforced by execution, as the sheriff could not distribute the fund under an execution against the custodian. Such a fund would not be subject to levy under an execution against him, and, if the plaintiff holds this fund in his hands,—as upon this record we are bound to assume he does,—the only way by which it could be reached is by a judgment directing the custodian to pay it to those entitled to it, and enforcing such judgment by contempt. The stipulations set up in the supplemental complaint do not in any way change this plaintiff's relation to this sum of money. There is no withdrawal of the allegation in the original complaint as to his holding this sum of money ready to pay it into court, or to the parties to whom the court should determine it to be due. The plaintiff then claims to be entitled to apply the money to the discharge of certain claims which he has against those who are entitled to it, but that claim has been disallowed. Nor did the plaintiff, in answer to this motion, allege that the fund was not in his hands, ready to be paid to those to whom he has been directed to pay it. The plaintiff, then, stands in the position of having a fund in his hands belonging to these defendants which the court had ordered him to pay to them, and which he willfully refuses to pay. In the light of the issues raised by the pleadings, and the decision upon which the judgment was entered, the judgment is not a judgment against the plaintiff, directing him to pay a sum of money, but a judgment directing the distribution of a fund in his hands, which, in view of his allegations in the complaint, may be considered to be a fund in court, the property of the defendants, the payment of which has been directed by the court. The plaintiff thus stands in the position of one willfully disobeying the mandate of the court, directing him to do a particular act in relation to a fund in court, which we must assume, from his failure to retract his allegation in his complaint, is still in his possession. As before stated, this judgment is not against the plaintiff, directing him to pay out of his own property a sum of money, which judgment can be enforced by execution. If he has this fund in his possession, ready to pay it as directed by the judgment, it could not be reached by an execution against the plaintiff, as it is not the property of the plaintiff. It is a specific sum held by the plaintiff to await the final judgment in this action, to be applied as directed by such judgment. That specific fund, held by plaintiff, is subject to the judgment of the court. This plaintiff has authority over it, and the judgment of the court directs him to hand that specific fund over to the parties designated. There is no general liability of the plaintiff to be satisfied by the application of the plaintiff's property. If this fund had been intact at the

time of the beginning of this action, and had been deposited by the plaintiff to await the final judgment of the court, and had been lost without the fault of the plaintiff, the defendant would have been entitled to a general judgment against the plaintiff for the repayment of this fund, to be enforced by execution. It was this fund, brought by the plaintiff into a court of equity, that was the subject of this action. Its distribution was to be decreed by the court. Such distribution has been decreed, and the only way that the court can enforce that judgment is to require the plaintiff to hand over that specific fund, which, upon the record, he still holds, to those to whom the court has adjudged it belongs; and it is a failure on the part of the plaintiff to obey this specific direction of the court, as to the disposition of this fund, that is a disobedience of a lawful mandate of the court, and subjects him to punishment for contempt.

In none of the cases relied on by the plaintiff was the question now under consideration presented. In those cases the judgment was against the defendant, generally requiring him to pay a sum of money to the successful party, which was to be satisfied out of his property generally, or which could be enforced by an execution against the defendant's property, not, as here, where the judgment, in view of the issues presented, and the decision upon which it was entered, directed the distribution of a sum of money which a party had brought into court, and which the judgment had directed him to distribute.

For these reasons, the order below was right, and should be affirmed, with $10 costs and disbursements.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

BARRETT, J. (dissenting). The question here is not what the judgment might have been, but what it is. People are not to be put into jail by a construction which expands the judgment beyond its definite and clearly-expressed terms. Ketchum v. Edwards, 153 N. Y. 534, 47 N. E. 918. What, then, is the judgment? Simply that the plaintiff pay to certain defendants specified sums of money. This judgment is based upon a decision which finds that the plaintiff "is indebted" to these defendants in the specified sums. There is not a word in the judgment respecting any trust fund. It is an ordinary equity judgment, which runs against the plaintiff personally, and which can be enforced by execution against his property, the same as any other judgment in personam. It cannot be turned into anything else by reference to the pleadings. The defendant respondent chose to formulate, ask for, and obtain this judgment. It was the judgment to which, as the result of the trial and decision upon the pleadings and proofs, she deemed herself entitled. Nothing has ever been taken from or added to it. It is even in harmony with the prayer for relief which she embodied in her answer to the plaintiff's supplemental complaint. That prayer for relief reads as follows:

"Wherefore this defendant prays that the plaintiff, as trustee of the fund mentioned in the complaint, be adjudged to pay to her the sum of eleven hun-

dred and seventy $^{20}/_{100}$ dollars ($1,170.20), with interest from April 1, 1897, together with the costs of this action which have accrued since that date."

The defendant, when she formulated her judgment, might, had she reasoned as Justice INGRAHAM does, have asked for a decree expressive of like views. But she did not. She preferred a personal judgment against the plaintiff, rather than a judgment directing him to hand over a specific fund. Either that, or she did not deem herself entitled to the latter judgment. In view of the judgment which was entered, no one would probably have been more surprised than her legal advisers, had they been told, after issuing an execution upon it, that that process must be set aside as unauthorized, and that their client's sole remedy for its enforcement was contempt proceedings.

But, further, the result would have been the same had the judgment, in terms, run against the plaintiff as trustee. It is an entire mistake to say that, in the cases referred to by the appellant, "the judgment was against the defendant, generally requiring him to pay a sum of money to the successful party, which was to be satisfied out of his property generally." They are, on the contrary, cases directing the payment of money by trustees as such. People v. Riley, 25 Hun, 587; Watson v. Nelson, 69 N. Y. 544; Myers v. Becker, 95 N. Y. 486; In re Hess, 48 Hun, 586, 588, 1 N. Y. Supp. 811; Randall v. Dusenbury, 51 How. Prac. 367, affirmed in 41 N. Y. Super. Ct. 456; and see Fassett v. Tallmadge, 14 Abb. Prac. 188; Ross v. Butler, 57 Hun, 110, 10 N. Y. Supp. 444; Bank v. Tailer (Sup.) 21 N. Y. Supp. 561; People v. Grant, 41 Hun, 351. The only difference between these cases and the present—treating the plaintiff here as a trustee—is that there the trustee was defendant, while here, if he be a trustee, he is plaintiff. But, surely, that is an immaterial difference. Indeed, there is something fanciful in the idea that the rule is affected by the inversion of the parties. The judgment is essentially the same, whether it runs against one who has come, or who has been brought into, the court. The plaintiff here, it is true, came into the court, but he brought no fund into it. If he had done so, he would not be troubled with this proceeding; for the court would have had the fund in its possession, and would have distributed it. The plaintiff in his complaint may have alleged that he had a fund, and may have asked the court to determine who was entitled to it. But his coming into court and doing this did not make his status as a suitor analogous to that of an officer of the court, to be dealt with summarily, upon failure to obey its directions. He was still a plaintiff in his own right, and as such he simply invoked an appropriate judgment. The judgment thereupon given can only be enforced according to law, as applicable to its terms. There is nothing in the point that the judgment could not be docketed and enforced by execution, because of the requirement that it be paid within five days. Jacquin v. Jacquin, 36 Hun, 378; Branth v. Branth (Sup.) 13 N. Y. Supp. 360; and see O'Gara v. Kearney, 77 N. Y. 423. Were that position maintainable, imprisonment for debt could be revived by the simple device of making money judgments payable in a specified time.

The order appealed from should be reversed, with $10 costs and disbursements of the appeal, and the motion denied, with $10 costs.

RUMSEY, J., concurs.