(33 Misc. Rep. 118.)

### LESLIE v. SARATOGA BREWING CO. et al.

### In re GAFFEY.

. (Supreme Court, Special Term, Albany County.   November 28, 1900.)

CONTEMPT—MORTGAGE SALE—DEFAULTING BIDDER.
      As ·an order for payment of money generally cannot be enforced. by contempt proceedings, but only one for payment of a specific fund in the possession of, or under the control of, the person, and an order for payment by a defaulting purchaser at mortgage sale of the difference be- tween his bid and the amount obtained on the resale can be entered up· in the final judgment so that execution may issue on it, it cannot be·

enforced by such proceedings; the cases in which an order can be so enforced being defined by Code Civ. Proc. § 14, empowering a court to punish, by fine and imprisonment, in case of misconduct by which the right or remedy of a party may be prejudiced, "a party　＊　＊　＊　for nonpayment of　＊　＊　＊　money ordered or adjudged　＊　＊　＊ . to be paid, in a case where　＊　＊　＊　execution cannot be awarded,　＊　＊　＊　or for any other disobedience to a lawful mandate"; and procedure only being provided by section 2268, declaring that where the offense consists of neglect to obey an order requiring payment of a specified sum of money, and the court is satisfied that demand therefor has been made and payment refused or neglected, it may issue, without notice, a warrant to commit the offender.

Action by Mrs. Frank Leslie against the Saratoga Brewing Company and others. An attachment as for contempt was issued against Daniel Gaffey for disobedience of an order to pay the difference between his bid at the first sale and the amount obtained on the resale, which attachment he moves to vacate. Attachment vacated. See 64 N. Y. Supp. 1069.

A judgment of foreclosure and sale was obtained in the above-entitled action, and pursuant to such judgment the premises were exposed for sale on the 13th day of November, 1899. At that time Daniel Gaffey, through his attorney, bid in such premises for the sum of $21,600; he being the highest bidder therefor. After having bid in the same, the said Daniel Gaffey declined and refused to comply with the terms of the sale; whereupon and pursuant to such terms of sale said premises were again exposed for sale by the referee, whereupon they were sold for the sum of $18,700. That thereafter, upon application being made to the court, and on the 10th day of March, 1900, an order was made directing Daniel Gaffey to pay over to the referee the sum of $2,900, with interest thereon from the 23d day of November, 1900, being the difference between the sum at which the premises were struck down to him and that for which they were sold upon the resale; and it was further ordered that, in case of the failure of the said Daniel Gaffey to make such payment after the service of the order, the moving parties might proceed to punish the said Daniel Gaffey as for a contempt. That thereafter, and pursuant to such order, an attachment, as for a contempt, was issued against the person of said Daniel Gaffey. A motion was made at a special term of this court to vacate such attachment, and, by consent of the attorneys of the respective parties, such motion is now brought on to be heard at this special term.

John T. Norton, for the motion.
J. Newton Fiero, opposed.

HERRICK, J. All questions as to regularity are waived by the attorneys to these proceedings, and the sole and only question submitted to me is as to whether an order for the payment of the difference in the purchase price of property, under the circumstances above detailed, can be enforced against a defaulting purchaser by proceedings as for a contempt.

These proceedings, which deprive a person of his liberty and confine him to close custody, are dependent upon the statute regulating contempts, and such statute must be strictly construed in favor of the liberty of the citizen. They are intended to protect the power and dignity of the court, and are not to be used to enforce the collection of damages or the payment of debts as such.

The Code of Civil Procedure (section 14) provides that:

"A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy

of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in either of the following cases: * * * Subsec. 3. A party to the action or special proceeding, an attorney, counselor, or other person, for the nonpayment of a sum of money, ordered or adjudged by the court to be paid, in a case where by law execution cannot be awarded for the collection of such sum; or for any other disobedience to a lawful mandate of the court."

This subdivision defines the cases where an order for the payment of money may be enforced by proceedings as for a contempt. The moving party in these proceedings, however, claims to proceed under section 2268, Code Civ. Proc., which reads as follows:

"Where the offense consists of a neglect or refusal to obey an order of the court, requiring the payment of costs, or of a specified sum of money, and the court is satisfied, by proof, by affidavit, that a personal demand thereof has been made, and that payment thereof has been refused or neglected; it may issue, without notice, a warrant to commit the offender to prison, until the costs or other sum of money, and the costs and expenses of the proceeding, are paid, or until he is discharged according to law."

It is claimed that this section authorizes proceedings as for a contempt to enforce the payment of any money directed to be paid by order of the court. I think this is a misapprehension of the intent of the last-quoted section. It is not a definition of cases in which proceedings as for a contempt may be taken, but is simply the proceeding provided for enforcing, in appropriate cases, the contempts defined in section 14, as is apparent by reading section 2266. It is claimed, however, that section 2268 is not only a method of procedure, but also a statement of the cases in which such procedure may be taken, and in support of that contention reference is made to section 779 of the Code of Civil Procedure as authority for that construction. Formerly, the method of enforcing the payment of costs upon an order was by staying all proceedings upon the part of the party against whom such costs were awarded until they were paid. In 1882, section 779 was amended so as to provide for enforcing the payment of such costs by execution, as well as by staying the proceedings, but such provision referred only to costs. In 1884 such section was amended by inserting the words, "or any other sum of money," so that it provides "that where costs of a motion, or any other sum of money, directed by an order to be paid," etc.; that the payment of such costs or sum of money may be enforced by execution; but the same amendment added to the section the following clause: "But nothing herein contained shall be so construed as to relieve a party or person from punishment as for contempt, or for disobedience to an order in any case when the remedy or enforcement of such proceeding now exists." And it is claimed that not only is this a preservation of a then existing right to enforce, by proceedings as for contempt, the payment of money other than costs, directed by an order of the court to be paid, but that it is equivalent to a declaration that such right then existed.

This requires us, then, to examine whether, prior to the amendment of 1884, an order for the payment of money was enforceable by proceedings as for a contempt. The provisions of Code, § 14, subd. 3, and section 2268, are very similar to the provisions of 2 Rev. St.

(2d Ed.) pt. 3, c. 8, tit. 13, *p. 534, § 1, subd. 3, which provides as follows:

"Every court of record shall have power to punish," etc. "Subd. 3. Parties to suits, attorneys, counselors, solicitors and all other persons, for the nonpayment of any sum of money ordered by such court to be paid, in cases whereby law execution cannot be awarded for the collection of such sum; and for any other disobedience to any lawful order, decree or process of such court."

Section 4 provides as follows:

"When any rule or order of a court shall have been made for the payment of costs, or any other sum of money, and proof, by affidavit, shall be made of a personal demand of such sum of money, and of a refusal to pay it, the court may issue a precept to commit the person so disobeying to prison, until such sum, and the costs and expenses of the proceeding, be paid."

These sections have been passed upon by the court in the case of Myers v. Becker, 95 N. Y. 486, and the court, after setting forth both sections, referred to section 4 as follows:

"This section must be construed in harmony with the prior provisions cited, and authorizes the precept mentioned only where an execution cannot be issued. It does not, therefore, apply to a case where money has been ordered to be paid by a final judgment, and so it has been uniformly held. [Citing a number of cases.]"

One of the cases cited is Watson v. Nelson, 69 N. Y. 536, which was a case of disobedience of a surrogate's decree or order directing the payment of money generally, not out of a specific fund, by an executor, to the persons interested in the estate, where, after discussing the various provisions of the statute in relation to contempts, the court said:

"We have been referred to no case, and I have found none, since the Revised Statutes, in which disobedience of a decree or order, merely directing the payment of money by an executor, trustee, or other party, has been adjudged to be a contempt, for which a fine could be imposed, and the party committed, as for a criminal contempt, to close custody. It was the object of the enactments, as proposed by the revisors and adopted by the legislature, to distinguish between the two classes of cases; and, while they preserved the necessary powers of the court to maintain their own dignity and punish all willful disobedience or contumacy, not to allow even the court of chancery to visit a mere failure to pay a decree with more severity than was allowed to the courts of law, whatever may have been the origin of the debt."

I can see no reason for giving a different construction to the section of the Code from that given to similar sections of the Revised Statutes. A distinction is made between an order for the payment of a sum of money generally and where an order is made for the payment of a specific fund, which is in the possession of, or under the control of, the person against whom the order is made; this latter order being enforceable by proceedings as for a contempt, and not by execution. And, when such distinction is borne in mind, all seeming conflict between subdivision 3 of section 14 and section 2268 of the Code of Civil Procedure disappears. The appropriate procedure seems to be, where an order is made for the payment of money generally, as in the case of Myers v. Becker, supra, to enter a judgment thereon, and to issue an execution upon the judgment, and, where money can be collected in that way, proceedings for contempt cannot be taken.

No question is raised here as to the liability of a defaulting bidder to pay the difference between his bid and the amount for which the premises are sold upon a resale, but I have been referred to no case, and have been unable by my own research to find one, which defines the practice to be pursued in enforcing that liability. The bidder, by his action, has made himself a party to the proceeding or action in which the sale is made, and a proceeding against him to enforce his liability upon his bid must be taken in such action or proceeding. "It is a familiar principle that any person who interferes pendente lite with the subject-matter of a suit in equity submits himself to the jurisdiction of the court, to be exercised by petition or motion in the original suit, and that he acquires no rights in that manner which may not be modified, controlled, or directed without any new proceedings directly against him." Proctor v. Farnam, 5 Paige, 614; Cazet v. Hubbell, 36 N. Y. 677; Andrews v. O'Mahoney, 112 N. Y. 567, 20 N. E. 374; Archer v. Archer, 155 N. Y. 415, 50 N. E. 55. And, pursuant to that doctrine, the court in the case of Miller v. Collyer, 36 Barb. 250, refused to maintain an action against a defaulting purchaser; holding that the proper remedy was an application to the court to compel him to complete it or resell the property, and told him liable for the loss and additional expense. The determination, by motion or otherwise, made in the principal action, of his liability and its extent, would be a final determination of the rights of the parties, and, within the Code (section 1200), a judgment. "A judgment is an adjudication of the rights of the parties in respect to the claims involved." McNulty v. Hurd, 72 N. Y. 519. And an order so made could be entered up in the final judgment in the same manner that an order for the payment of a deficiency arising upon the sale by mortgage foreclosure is entered up against the party liable therefor in the final judgment, and upon a judgment so entered an execution can be issued. Such seems to me to be the proper practice. That proceedings as for a contempt cannot be taken to enforce an order for the payment of money generally has been held, since the amendment of 1884 to section 779 of the Code of Civil Procedure, in Re Hess, 48 Hun, 586, 1 N. Y. Supp. 811. See, also, Betz v. Buckel (Super. N. Y.) 24 N. Y. Supp. 487; Forstman v. Schulting, 42 Hun, 643; Halsted v. Halsted, 21 App. Div. 466, 47 N. Y. Supp. 649; Cohu v. Husson (Super. N. Y.) 6 N. Y. Supp. 512. The case of Andrews v. O'Mahoney, supra, has been cited to me, to the effect that proceedings as for a contempt can be taken in cases of this kind. The court there said, of the purchaser at such sale, that "by bidding he subjects himself to the jurisdiction of the court, and, in effect, becomes part of the proceedings, and he may be compelled to complete his purchase by an order of the court, or by its process for contempt, if necessary." In that case no order had been made holding the purchaser liable for any difference between the sum realized on the second sale and that bid upon the first. There had been no second sale. An application to the court had been made to compel the purchaser to complete his purchase. There was no adjudication making him liable for a sum of money, as in the case before us; no request for such an adjudication; no order had been asked for or made holding him liable for

any sum of money. Again, what was said by it in reference to proceedings for contempt was obiter, as that question was not then before the court.

The attachment should be vacated.